**VALMOR PRODUCTS COMPANY,**
**Plaintiff-Appellee,**

v.

**STANDARD PRODUCTS CORPORA-**
**TION, Defendant-Appellant.**

**No. 72–1121.**

United States Court of Appeals,
First Circuit.

Heard June 5, 1972.

Decided July 7, 1972.

Harold E. Cole, Boston, Mass., for appellant.

Edward C. Threedy, Chicago, Ill., with whom Clarence E. Threedy, Threedy & Threedy, Chicago, Ill., and Richard P. Crowley, Boston, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Defendant Standard Products Corporation ("Standard"), a Massachusetts corporation, appeals from an order of the district court enjoining it from further use of the trademark "VALMOR" in connection with its line of electrical "beauty aids", cancelling its registrations of that trademark, and referring the case to a master for an accounting of damages and profits. The action was brought under the Lanham Act, 15 U.S. C. §§ 1051 et seq., and under the Massachusetts law of unfair competition, M. G.L. c. 110, §§ 7A and 8, with jurisdiction based on 15 U.S.C. § 1121 and 28 U.S.C. § 1338. Appellant challenges the court's underlying finding that its use of the trademark infringes the right of Valmor Products Company ("Valmor"), an Illinois corporation, to the same trademark and constitutes unfair competition, arguing essentially that the court accorded undue scope to the trademark, which, as an elision of "value" and "more", is allegedly a weak, self-laudatory one deserving of, at most, narrow protection.

Preliminarily, it is not clear whether Standard contests the propriety of the trademark's being recognized at all. The claim would not in any event be persuasive, since the trademark is not descriptive or misdescriptive of any of the products of either corporation, 15 U.S.C. § 1052(e) (1), *compare* Devcon Corp. v. Woodhill Chemical Sales Corp.,

455 F.2d 830 (1st Cir. 1972), but rather is suggestive of quality. More importantly, though, even if under some circumstances self-laudatory trademarks should not be registered or protected, *cf.* Supreme Wine Co. v. American Distilling Co., 310 F.2d 888, 890 (2d Cir. 1962), the district court here found that

> "Plaintiff's use of the mark on its products and in its advertising over forty-five (45) years has . . . established a close connection between the trademark name and its products and business reputation."

We construe this as a finding that the mark "has become distinctive of [Valmor's] goods in commerce", 15 U.S.C. § 1052(f), and thus appropriate for registration, even though self-laudatory. *See* 3 R. Callman, The Law of Unfair Competition, Trademarks and Monopolies, § 77.4(c), at 373–75 (3d ed. 1969).

The core issue, then, is not whether the trademark is a valid one but whether its scope is sufficient to make Standard's appropriation of the mark an infringement. Nor does appellant's reference to the notion of weak trademarks obviate the need for a detailed evaluation of the record. The strength or weakness of a distinctive mark is a matter of degree. *See generally* R. G. Barry Corp. v. A. Sandler Co., 406 F.2d 114 (1st Cir. 1969). Valmor first registered the trademark in 1926 for forty listed items, including face powder, talcum powder, hair pomade, liquid hair dressing and hair tonic, and having twice been renewed, the registration is current (No. 218,299). Valmor secured additional registrations in 1967 for wigs (No. 833,729) and for wig spray and wig oil (No. 833,795). Standard's registrations, cancelled by the district court,

are for "combination electric hair brush and massager, and a cordless electric manicure set" (No. 795,343), registered in 1965, and for "electric callous erasers; electrical face patters; electrical facial vapor diffusers; electric hair curling iron; and electrical hair curling set, comprising hair rollers, electrical heating elements and thermostat" (No. 876,641), registered in 1969.

The federal statutory test of trademark infringement is whether use by the second party is "likely . . . to cause confusion", 15 U.S.C. § 1114(1)(a) [1] Esquire, Inc. v. Esquire Slipper Mfg. Co., 243 F.2d 540, 543 (1st Cir. 1957). The district court concluded that there is a "substantial likelihood of confusion in the minds of consumers as to the source of the various products sold under the VALMOR name", and its conclusion is based on specific findings that the products are closely related in function, appeal to the same class of consumers, and are advertised nationally in similar publications and sold nationally in the same type of store, and by its recognition that the trademarks themselves are spelled identically.

■ Standard takes exception to these supportive findings, insisting, first, on the dissimilarity of the products. While Standard points out that the products are not in direct competition, it recognizes that the inquiry does not end there. *See* Esquire, Inc. v. Esquire Slipper Mfg. Co., *supra.* Its brief specifically relies upon the fact that its products are electrically powered and "serve different purposes, such as massaging, erasing callouses, etc." [2] The district court, acknowledging the use of electrical power, nevertheless found the two sets of products to be closely related. As to some of those products, shel-

---

1. Our discussion will, for convenience, be cast in terms of infringement under the Lanham Act. Valmor has not shown us, nor have we found, any respect in which the Massachusetts law of unfair competition would afford it greater relief on the facts of this case than is afforded by the Lanham Act.

2. As the court recognized, the placement of the products in different classes for the purpose of trademark registration with the Patent Office does not preclude a finding of likelihood of confusion.

tered under appellant's "etc.", the court found:

> "In some cases, products may be used in conjunction: defendant's compact with plaintiff's face powder or rouge, or defendant's hair dryers or curling sets in conjunction with plaintiff's hair care preparations."

The record, including advertisements and the testimonial statements of the presidents of both parties, support this commonsensical finding.[3] The connection is somewhat less strong between Valmor's products and others of those sold by Standard. Standard's "Smooth-away" callous eraser, for example, as a contented foot with smiling toes on the packages suggests, is designed to be used primarily on the feet, while the evidence does not indicate that any of Valmor's products was intended for such use.

The court did, however, make a broader finding, that all of the products were "designed for the same end—the enhancement of personal appearance". Though Standard promoted throughout the trial a distinction between "personal care items", which it says it produces, and "beauty aids", which it says Valmor produces, there is ample evidence to support the court's finding the distinction illusory. The callous eraser was advertised by pamphlet as making feet and elbows "pretty", and its package characterized the product as giving "NEW COMFORT, NEW RELIEF, NEW BEAUTY";[4] appellant's battery-powered manicurette was advertised "for her lovely hands" and "for his executive grooming"; and the facial toner was billed as an "amazing and inexpensive new beauty-care aid". In short, the dis-

trict court's finding that the products were closely related was not "clearly erroneous". F.R.C.P. 52(a).

■ Additionally, appellant challenges the finding that the two lines of products were advertised in similar publications and sold in similar types of stores. There was considerable evidence demonstrating the extent of Valmor's advertising in magazines and newspapers. The evidence concerning the advertising of Standard's products was, we acknowledge, slim, but did include an admission that stores which buy products from appellant receive advertising allowances and place advertising in newspapers. Valmor's president stated that his company sells goods directly to consumers by mail and house-to-house solicitation and that it sells to stores and distributors, who in turn sell to drug, department and discount stores.[5] Standard's president indicated sales to department stores among others. Beyond this, any possible infirmities in the findings as to mode of advertising or type of store are peripheral. The ultimate issue is, rather, the likelihood of confusion in the minds of consumers as to the source of the products. The court found, warrantably, that the products appeal to the same class of consumers, and, indeed, appellants do not specifically challenge that finding. Nor does the absence of more than what the court called a "minimal amount" of actual consumer confusion detract from its finding of a likelihood of confusion.

■ Even if we do not overturn the court's findings, however, Standard maintains that the remedies granted—an injunction cancellation, and an accounting—were improper. The district court

---

3. The court's opinion properly does not, in finding the products to be related, rely upon Valmor's 1967 registration for wigs, wig spray and wig oil, which was subsequent to Standard's 1965 registration.

4. In attempting to avoid the clear implication of the legend, Standard's president made what can only be considered a further confession:

> "The major part of the statement is the 'new comfort, new relief'. 'New beauty' is an added part of the statement, but beauty in the form of callous removal is a broad statement."

5. Valmor also introduced a number of sales slips recording sales to stores, for the most part drug stores.

found Standard's affirmative defense of laches, apparently sought to be interposed against any relief, to be without merit, Valmor having learned of Standard's use of the trademark in late 1969 and having brought suit in April, 1970. Citing 15 U.S.C. § 1072, a provision declaring registration of a mark to be constructive notice thereof, appellant would have us charge Valmor with notice of the mark as of 1965, the year it was registered. We are not persuaded. While a statute of limitations might be thought to begin running upon constructive notice, by analogy to an undiscovered tort, *cf*. Clark v. Gulesian, 429 F.2d 405 (1st Cir. 1970), the offense of infringement is a continuing one, and appellant has not suggested that the statute of limitations is a bar. Laches, on the other hand, is an equitable doctrine which penalizes a litigant for negligent or wilful failure to assert his rights, and is not appropriately applied here, where Valmor was unaware of the infringement and Standard made no claim that the lack of knowledge was itself wilful or negligent.

■ The court's order cancelling Standard's trademark registrations, 15 U.S.C. § 1119; Blanchard Importing and Dist. Co. v. Charles Gilman & Sons, 353 F.2d 400 (1st Cir. 1965), is alleged to be improper for the reason that Valmor did not introduce during its case-in-chief copies of Standard's trademark registrations, but did so only on cross-examination of Standard's witness. Standard moved to dismiss the request for cancellation at the close of Valmor's case, which motion was taken under advisement, and objected to the introduction of the registrations on cross-examination of its witness. While it would have

been better practice to introduce the registrations at an early point, failure to do so was not fatal. Standard was in no way prejudiced by this oversight, having, in its answer to the complaint, admitted ownership of the registrations in question and, in answer to an interrogatory, listed its products.

■ We do, however, find merit in appellant's final contention that an accounting for damages and profits was inappropriate. As the governing language of 15 U.S.C. § 1117 indicates, damages and profits may be awarded "subject to the principles of equity". The opinion below fails to reveal the court's basis for its action in this respect. It found neither fraud nor "palming off". *Compare* Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 131, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947) *with* Baker v. Simmons Co., 325 F.2d 580 (1st Cir. 1963). Since Standard's products do not, concededly, compete with Valmor's, Standard can hardly be thought, in the absence of fraud or palming off, to be a trustee for profits which but for the infringement would have been Valmor's, nor, when given the opportunity at several points, was Valmor's president able to specify any damages which his company had suffered. Accordingly, we hold that cancellation and an injunction against further use adequately satisfy Valmor's equities. In so holding we do not suggest that even where there is no direct competition a party may not recover general damages by showing dilution of his mark through injury to his goodwill by marketing noticeably inferior goods. There was no such evidence here.

Affirmed in part; reversed in part.