**PUROLATOR, INC., Plaintiff,**

v.

**EFRA DISTRIBUTORS, INC., Enrique Franceschini and Enrique Franceschini, Jr., Defendants.**

Civ. No. 80–2575.

United States District Court, D. Puerto Rico.

Sept. 29, 1981.

472

Patrick J. Wilson, O'Neill & Borges, Hato Rey, P. R., William T. Boland, Jr., Allen I. Rubenstein and Charles B. Spencer, Kenyon & Kenyon, New York City, of counsel, for plaintiff.

Luis N. Blanco-Matos, Hato Rey, P. R., for defendants.

MEMORANDUM OPINION AND ORDER

CEREZO, District Judge.

This is a suit in equity brought by Purolator, Inc., a corporation organized under the laws of Delaware, to enjoin defendants Franceschini, father and son, and EFRA Distributors, Inc. (EFRA), a corporation created under the laws of the Commonwealth of Puerto Rico, from using the mark "Puro Filter" or any other equivalent name bearing the root word "PURO", alone or in combination, in connection with oil or air filter products; applying the said name or mark to stationery, pamphlets, signs or advertisements in the promotion of that class of products; from engaging in unfair competition practices against plaintiff and from representing that defendants' products are produced or authorized by Purolator. The action was filed on December 31, 1980, approximately three months after defendants

began selling air and oil filters in the Puerto Rican market bearing the mark "Puro Filter". The complaint alleges that use of the mark "Puro Filter" or the name "Puro" by defendants infringes plaintiff's registered trademark Purolator in violation of federal trademark laws, 15 U.S.C. Sections 1114, 1116, 1117 and 1118 and the laws of Puerto Rico and constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a).

Defendants answered the complaint on February 26, 1981 and raised the following affirmative defenses—lack of subject matter jurisdiction, application of the doctrines of laches and license, failure to state a claim, the existence elsewhere of primary jurisdiction and the existence of adequate alternative remedies at law. On March 9, 1981 plaintiff requested leave to file a supplemental complaint to allege as additional infringing acts defendants' marketing of vehicle batteries and other automotive products using the trade name "Puro" and to include in its prayer for relief that defendants be required to assign to plaintiff and/or cancel its trademark "Puro Filter" issued to EFRA by the Department of State Trademark Office of the Commonwealth of Puerto Rico on March 2, 1981.

A hearing was held on March 5 and 13, 1981 on the motion for preliminary injunction at which both parties presented testimonial and documentary evidence. Upon agreement of the parties the testimony of Mr. Enrique Franceschini, Jr. was substituted by his deposition and briefly supplemented by testimony in open court. On June 1, 1981 the parties filed a Stipulation agreeing on the consolidation of the preliminary injunction hearing already held with the permanent injunction and waived any further hearing on the merits.[1]

Purolator, Inc., a major producer of automotive filter products, sells air, oil and fuel filters under the registered trademark Purolator in the United States and Puerto Rico. It has been selling Purolator filters

1. A motion to Dismiss previously filed by defendants has been disposed of in a separate order.

in the automotive market in Puerto Rico for approximately 30 years. As disclosed by the U.S. Patent Office records, Plaintiff's Exhibit 16, on October 26, 1925, Motors Improvements, Inc., a Delaware corporation, filed an application to register the trademark PUROLATOR which it had continuously used in its business since July 1, 1924 in connection with oil filters particularly adapted for automobiles. That trademark was duly registered and renewed on May 11, 1946 to Purolator Products, Inc., a Delaware corporation, upon a showing of ownership of the mark originally registered to Motors Improvements, Inc. A second renewal for a period of 20 years as of May 11, 1966 was made. On January 9, 1981 the Commissioner of Patents and Trademarks certified that the registration of PUROLATOR, Trademark 212,659, was in full force and effect as disclosed by the records of the U.S. Patent and Trademark Office which showed title to be in Purolator, Inc., plaintiff herein. The records further reveal that on December 30, 1975 the trademark PUROLATOR, as shown in Plaintiff's Exhibit 17, was registered for a term of 20 years from that date by plaintiff Purolator, Inc. for use on filters for land vehicles. This trademark, to which No. 1,028,571 was assigned in the Principal Register, appears impressed on plaintiff's air and oil filters. It is this mark which plaintiff claims has been infringed by defendants' adoption of "Puro Filter". The mark has a particular lettering style in print and two parallel lines above it which end with a wave on the left side.

Purolator, Inc. sells its filters locally through an exclusive distributor, Mascaró-Porter & Co., Inc., a corporation organized under the laws of Puerto Rico since 1949, which in turn sells them to retailers. Purolator products are available to the general public in Puerto Rico at auto parts and mass merchandise department stores as well as gas stations. Purolator sales in Puerto Rico to Mascaró-Porter in 1980 reached approximately 1.2 million and resale by that distributor to retail outlets surpassed the sum.

Mascaró-Porter promotes Purolator products in Puerto Rico by participating in trade shows, giving demonstrations of the different types of filters, distributing posters and by the activity of its salesmen. It employs ten traveling salesmen who sell Purolator products to retailers all over Puerto Rico and neighboring islands. Plaintiff has additionally spent substantial sums of money in the promotion of its trademark with respect to the sale of car filters.

Juan A. Dávila, actual sales manager of defendant EFRA, was an employee of Mascaró-Porter for 23 years. During that period he served as credit manager and sales manager at Mascaró-Porter. Another employee of Mascaró-Porter, Mr. Alberto Prieto, left his employment there as a counter salesman to work as a sales representative for EFRA.

EFRA Distributors, Inc., a corporation controlled by the Franceschini family, was established in 1965 as a manufacturers' representative and distributor of auto accessories such as tires, oil and filters. On September 1980 it started selling its own brand of oil and air auto filters using the name "Puro Filter". Prior to that it distributed Torite, Astro and Lee air and oil filters. Since opening this business in late 1980, EFRA sells its PURO filters throughout Puerto Rico to more than one thousand retailers such as gas stations, auto parts and mass merchandise stores like Sears and Barkers. Defendants' volume of sales for air and oil filters with the "Puro" mark totalled $16,000.00 during a five month period from mid-September 1980, date of the first sale at a gasoline trade show, until the February 24, 1981 Franceschini deposition. Annual total business of EFRA which encompasses the sales of other brands distributed by it have reached the approximate sum of six million dollars.

Defendants' "Puro" filters are 10% to 25% cheaper than plaintiff's filters and inferior in comparison to the latter. This was demonstrated by the results of quality comparison tests conducted on Puro and Purolator air and oil filters using standardized test procedures published by the Society of Au-

tomotive Engineers (SAE). Tests on the "Puro" oil filter specifically revealed: (1) a significant amount of built-in contaminant on the media migration test which is a measure of the inherent cleanliness of the filter itself, and, (2) contaminants bypassed the filter and entered into the engine because of poor workmanship. Due to differences in construction, life and efficiency values for "PURO" filters were very low. The paper filtering medium in the Puro samples tested, contrary to the Purolator filters, was not totally cemented to the end caps allowing contaminants to bypass the filtering paper. There was rust and corrosion on the metal parts of the PURO oil filters. Because of these and other deficiencies which are not apparent to a car owner and which cut down its efficiency, the "Puro" oil filter is likely to cause damage to a vehicle. Four different types of Puro and Purolator air filters were also tested to determine their their efficiency, resistance to the flow of air and their dust capacity. Designed to perform an identical function—to keep the dirt of the road out of the engine—the Puro air filters showed less dust capacity than Purolator for it took less dust to bring them to the point where the flow of air essentially stopped causing them to clog. Clogging causes the engine to stop functioning or to run roughly since the dust enters the carburator, mixes with the fuel and is distributed into the pistons producing excessive wear.

Both Puro and Purolator oil filters are packaged in boxes which have a transparent window in front. They have a similar color scheme—red, white and blue—and are approximately the same size. Both brands have a logo consisting of two parallel blue lines yet the shade of blue varies. The Purolator lines end in a wave while those on Puro products have small oil droplets between them and one larger drop falling from one end.

The names "Puro" and "Purolator" are impressed in the litigants' respective filters in identical lettering style. These marks are written in printing with eye-catching peculiarities such as an uncrossed "t" and identical type and size letters. They both have do-it-yourself installation instructions for the car owner printed on the boxes.

Defendants' Puro filters, air and oil, have conversion tables printed on them which indicate other brands or types of filters with which they are interchangeable. Puro Filter PF–49, an oil filter, for example, indicates in its conversion table that it can be replaced by, among others, PURO PER–49 which is plaintiff's oil filter Purolator PER–49. The same holds true for defendants' air filter. The conversion table shows one type of Puro air filter, specifically Puro ARP–45 replaces PURO AFP–45, meaning Purolator AFP–45.

Contrary to Purolator products, Puro filters have no indication of source or origin on their packages. There is no reference whatsoever either to their owners or to Rex Manufacturing Co. which makes the filters and the containers in which they are packed for defendants.

According to defendant Franceschini's testimony during deposition they chose the Puro brand as a "bilingual" mark, specifically Puro Filter, which signified what they wanted to convey to the ultimate consumer: that PURO in Spanish means pure, thus their brand signified an item that purifies. When the Franceschinis designed this mark they were aware of the existence of the Purolator mark. They had been in this market for years distributing other competing brands. Mr. Franceschini, Jr. dismissed any resemblance between the two remarking that "Purolator was another word". Two or three years before this suit was filed, defendants tried to get Purolator to manufacture their private label Puro. This was a long process which, according to Franceschini's deposition, lasted almost two years and ended when Purolator refused their request. They then turned to other manufacturers of filters to produce their private brand and on September 19, 1981 displayed their Puro filters to the public for the first time at a trade show at the Cerromar Hotel. At that time defendants set up a booth at which they advertised Puro filters by displaying models of air and oil

filters next to a relatively large sign with a white background and the words Puro Filter written in the same shade of red and exact lettering style as Purolator with the two parallel lines in same shade of blue. This particular advertising display, considered in its entirety, creates the impression that it is referring to plaintiff's products.

There is credible testimonial evidence that defendants tried to induce consumers at the trade show to believe that Puro and Purolator products originated from a single source by linking both to one manufacturer —Purolator. Martica Avila, the fiancée of George Lawrence, Purolator's export manager, testified about a particular incident in which, attracted by the Puro booth, she approached a salesman, to obtain information on Puro products because of their similarity with Purolator goods. Her version is that since she speaks Spanish and her fiancée does not, upon his urging, she set up a conversation with EFRA salesman Alberto Prieto letting him know of her interest in buying Puro filters and specifically inquiring as to their manufacturer. His answer, according to this witness was that they were manufactured by a "very good American company named Purolator".[2] Defendants' version, as stated by their salesman Prieto, denies any admission of this nature. Prieto acknowledged talking to Miss Avila at the gasoline trade show and giving her his business card with E. Franceschini's name handwritten by him on the back, but denied any statement as to Puro products being made by Purolator. This witness, even though he sells Puro products and promotes them at trade shows such as this, insisted that he has never known who manufactures them. He made a point of denying any knowledge of the manufacturer's identity. After observing the demeanor and weighing the credibility of both witnesses, the Court accepts plaintiff's version on representations by a salesman of defendants on the origin of Puro products and rejects his testimony as unworthy of belief.

Finally, in comparing these two marks the Court deems it significant to note that Purolator articles are generally referred to in the trade as Puro products. The word "Puro" is the catch-word or dominant part of the brand Purolator and is widely used by competitors, employees of Purolator, Inc., its local distributor, retailers and the general public when referring to Purolator goods. The several catalogs of mayor competitors such as Fram and Baldwin filters, which are printed to assist consumers, refer to various styles of Purolator filters by their shortened form PURO. The fact that the general public also uses the shortened designation "Puro" for purolator products is shown by defendants' reference to Purolator as simply Puro in the interchangeability legends printed in the boxes of their own filter products. This is evidence that the consumers associate the word Puro with Purolator filters. When defendants selected the name Puro they were aware of this association. The reference to Purolator as Puro in the data offered by defendants to the consumers in these equivalency tables is, incidentally, also proof of their prior knowledge of the public's recognition of plaintiff's products as Puro. The undisputed testimonial evidence presented by plaintiff also confirms the general usage of the mark Puro for Purolator products.

## TRADEMARK INFRINGEMENT CLAIM

Against this factual background, it is our task to determine whether plaintiff's brand has been infringed and whether the order of honest struggle between producers of related goods competing for a share of the same market has been violated. In short, whether plaintiff's claims of trademark infringement and unfair competition have a basis in fact and merit the protection afforded by the statute. It is well settled that confusion is the key and common element of both infringement and unfair competition claims. A determination must be made whether confusion is likely to be created in the mind of the ordinary purchaser or the "reasonable prudent con-

2. Page 50, Testimony of Martica Avila during March 5, 1981 Hearing.

sumer" by defendants' use of the particular mark involved, *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366 (1st Cir., 1980); *McLean v. Fleming*, 96 U.S. 245, 250, 24 L.Ed. 828 (1827); *Trademarks and Unfair Competition*, McCarthy, Vol. 2, Section 23.-17 (1973) Ed. In deciding the crucial question of likelihood of confusion, the courts, in addition to the similarity of the marks, consider extrinsic facts such as the types of goods, the classes of prospective purchasers, the competitive relationship of the parties, the relationship between the channels of trade, the relationship between the parties' advertising, the public awareness of plaintiff's trademark, manner of trademark use, the degree of the defendant's necessity to use his mark, defendant's intent in adopting its mark, the trend towards expansion in the respective trade or industry as to territory of line of merchandise, evidence of actual confusion and the strength of plaintiff's mark. *DeCosta v. Columbia Broadcasting System, Inc.*, 520 F.2d 499, at 513 (1st Cir., 1975); *Pignons S.A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482 First Circuit, 1981; *Valmor Products Co. v. Standard Products Corp.*, 464 F.2d 200 (1st Cir., 1973).

No substantial evidence of actual confusion was presented in this case. We note, however, that this suit was filed only months after defendants' marketing began. As noted in *Keebler supra*, quoting *DeCosta*, at 514: "[W]hen a suit for injunctive relief from a competitor's use of a deceptively similar mark or package is brought at the incipiency of the alleged infringement, '[p]laintiff should not be expected to stand by and await the dismal proof'". When the marks have been in the market for a substantial period of time the instances of actual confusion acquire significance in determining likelihood of confusion.

We shall screen the facts of this case, in light of the relevant factors that govern a likelihood of confusion inquiry:

Having found a direct association by the public and the industry generally of the root work Puro with Purolator products, the phonetic and visual identity of defend-ants' and plaintiff's trademarks is obvious. Aside from such general usage, it is also manifest that the dominant part of the Purolator mark is the word Puro which has been adopted by defendants as the first word of their composite mark Puro Filter. As stated in *Queen Mfg. Co. v. Isaac Gensberg & Bros.*, 25 F.2d 284 (8th Cir. 1928):

> "In order to constitute an infringement it is not necessary that the trademark be literally copied. Neither is it necessary that every word be appropriated. There may be infringement where the substantial and distinctive part of the trademark is copied or imitated." (Citations omitted)

Besides confusing similarity of the marks, there is also product similarity in this case. The filter products of both parties have identical functional characteristics. The distinguishing features of these goods are not readily noted by the consumer upon selecting one or the other for they are related to the quality of workmanship in their inner structures and to their long-run efficiency performance. Both are relatively low cost products of similar size and shape which come in various styles and models and which interchange with other functionally identical products sold by competitors locally. Except for the peculiarities of their names and package design, an ordinary filter does not exhibit any distinctive visible features when compared with another such item. These are not the "high priced, single purchase articles" the Court compared in *Polaroid* and in *Fisher Stoves*[3] which possess unique characteristics that can be assessed by the cautious buyer.

The evidence shows that the products of both parties compete directly in the same market. They are sold through the same trade channels to ordinary buyers within the wide spectrum of car owners. Both brands are marketed through mass merchandise stores and offered to the same public. They both appeal to a wide range of consumers who may ultimately choose between one or the other in the same man-

3. *Fisher Stoves, Inc. v. All Nighter Stove Works*, 626 F.2d 193 (1st Cir., 1980).

ner as buyers in a supermarket select between different brands of related products on display. Next to the knowledgeable purchaser familiar with every bolt and nut of an engine, within that vast segment of consumers one also finds the distracted, the uninformed, the ignorant, the unconscious and the non-discriminating. These products are marketed to appeal to all. They are not specialized or complex items whose every distinctive feature is scrutinized by the sophisticated buyer. Rather, they are low cost over the counter goods mass marketed and chosen among many others with the same functional characteristics by all who tend to the basic maintenance needs of their vehicles. What the ordinary buyer has is an impression or recollection of a particular mark fixed in his mind by promotion or by personal past experience with the article. Defendants try to restrict the public segment that selects among various oil or air filters to the gas station attendant. They conclude that the immense majority of Puerto Rico's car owners "drive to a gas station or repair shop and rarely ask for special brands" and that "it is the shopowner or mechanic, a knowledgeable buyer, who makes the decision".[4] To be sure, among the potential buyers of car filters, are those who purchase them at a gas station or repair shop and delegate the choice on the mechanic. Defendants fail to remember, however, that their own proof showed that their filters, which have installation instructions on the package to assist consumers, are sold to the general public at department stores such as Sears and Barkers. Any such restriction as defendants claim in the retail outlets is contrary to the evidence.

As to defendants' intent in selecting the Puro mark for their filters, no evidence has been presented to justify their need to adopt a mark which at the moment of selection was already a familiar name in the auto industry for related products of an excellent quality and an established reputation. As stated, Purolator, shortened as Puro by competitors and users alike, had been sold in Puerto Rico for three decades before defendants decided to market their private brand Puro. EFRA claims that Puro is a descriptive word which conveys the meaning of the products' function and, as such, is not subject to appropriation by anyone or entitled to trademark protection. The test of descriptiveness "is whether the word as used conveys the characteristics, functions or qualities of a product to one who has never seen it and does not know what it is". *Trademarks and Unfair Competition*, McCarthy, Vol. 1, Section 11:6, at 356. The "merely descriptive" language of the Lanham Act apparently means that if the mark clearly does not tell the potential customer *only* what the goods are, their function, use or ingredients, then the mark is not "merely descriptive". McCarthy, Vol. 1, *supra*, Section 11:18 at 382. For a word to be "merely descriptive" it must not be necessary to exercise the powers of perception and imagination. This claim of descriptiveness of the word Puro in its Spanish definition cannot be discussed separately from defendants' other contention that their mark Puro Filter responds to a bilingual conception in which the first word of the composite mark refers to the function and the other to the item itself. To begin with, Puro in Spanish, stands for the adjective pure. It is not equivalent, although related, to the verb "purificar" which means to purify. Defendants' composite mark is made up of a Spanish word— Puro—and an English word—Filter. Defendants' shaky claim of bilingualism is illtaken. Bilingualism is not the mixture of two languages but the ability to use two languages which is a totally different thing. Applying the test of descriptiveness to the entire mark which is jumbled up in two totally different languages, despite defendants claim that it is directed to a Hispanic community, one concludes that it is non-descriptive. The Spanish word "Puro" combined with the English word "Filter" requires the intervention of the consumer's thought process to translate the word filter to the Spanish language and then link to it

4. Defendants' opposition filed April 13, 1981 at P. 7.

the adjective pure. Such a process, if achieved by the ordinary Spanish-speaking purchaser who defendants seek to conquer, simply leads to the expression "Puro filtro" or "pure filter" and not to the idea of an object that purifies as defendants would have us believe in contending that "Puro" conveys only the function of the item. It is significant to note defendants' use of the same word "Puro" for their battery "Puro Power" an article that does not perform any purifying function.

Defendants' selection of Puro, the one word which points directly to a powerful competitor, can only be explained as a deliberate attempt to come as close as possible to it and cash in on the strength of a reputation established locally and nationwide decades before defendants even thought of entering the market. Their emphasis on the peculiarity of the geographical area in terms of Spanish being the dominant language of the general public does not conform with the choice of combining two languages in one same mark. This has more of a taste of a planned scheme to rebut claims of infringement and unfair competition than of an innocent choice of words.

Quoting from *Florence Mfg. Co. v. J. C. Dowd & Co.*, 178 F. 73, 75 (2d Cir.), the Court of Appeals for the Second Circuit in *Ritchie, Inc. v. Chesebrough-Pond's, Inc.*, 281 F.2d 755, 758 (1960), said:

> "It is so easy for the honest businessman, who wishes to sell his goods upon their merits, to select from the entire material universe, which is before him, symbols, marks and coverings which by no possibility cause confusion between his goods and those of his competitors, that the courts look with suspicion upon one who, in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between them."

## UNFAIR COMPETITION CLAIM

■ The discussion of intent in selecting the mark brings us to the conduct of defendants and their duty as competitors to avoid deceiving consumers as to the origin and identity of their products. See: *Q Tips, Inc., v. Johnson & Johnson*, 206 F.2d 144 (3rd Cir., 1953); *Fleischmann Distilling Corp., v. Maier Brewing Company*, 314 F.2d 149 (9th Cir., 1963); *Mortellito v. Nina of California, Inc.*, 335 F.Supp. 1288 (S.D.N.Y., 1972); *Baker v. Simmons Company*, 307 F.2d 458 (1st Cir., 1962). Although the infringement is in itself an example of unfair competition, there are other acts of defendants which also mislead the consumer as to the source of their products. Competition is a process of selection and unfair competition occurs when tactics are used to represent products in such a manner that customers are induced to believe that A's goods and B's goods come from a single source when in fact they do not. Competition is a relationship with mutual rights and obligations and the duty to act in harmony with the rules of competition is an affirmative obligation. 1 Callman, Unfair Competition, Trademarks and Monopolies, Section 6.2(c) (3rd ed. 1969).

■ The use by defendants of the name "Puro" when referring to Purolator filters in the conversion tables printed on their products, which are themselves labeled "Puro", is likely to lead consumers to believe that they have a common origin. Defendants' filters have no indication of origin whatsoever. Neither defendants' names as owners nor that of Rex Manufacturing Co., appear on the boxes. What the buyer reads upon examining the boxes of Purofilters is a common designation for both plaintiff's and defendants' filters as PURO. The message conveyed to him upon reading the conversion table printed on the boxes of defendants' filters is that the particular Puro filter he has before him, whatever type or model, can be replaced by another Puro model, as indicated in the legend. The difference in origin present when defendants' products are shown in the conversion table to replace other marks such as Lee and Fram, disappears in the case of the equivalency information given on Purolator designated as PURO. The use of the same word to refer to different products creates the impression that the filters of plaintiff

and defendant are but styles of one same brand. The plain message to the ordinary buyer is simply that one Puro model interchanges with another Puro model and that he is purchasing a different style filter of plaintiff when buying defendants' product. It is a deceptive yet rather crude manner of saying that both articles come from the same source.[5]

This situation considered along with defendants' intent upon choosing the Puro mark and the instance of false representation as to origin made by one of its salesmen at a trade show attended by the general public reveal deliberate attempts to unfairly gain advantage at plaintiff's expense. If unchecked these acts will allow defendants to market their product as a cheaper model of plaintiff's line of products thus diverting sales from it and conquering a part of the market, not by building their own good will and through their constructive effort, but by taking a free ride on plaintiff's name and reputation. Confidence in the quality of Purolator can deceive consumers into the belief that defendants' product, although less costly, is also of a high quality when in fact it is inferior. To allow this is to protect a dubious private interest against the interests of the public.

In view of the foregoing findings and conclusions, a permanent injunction shall issue forthwith in accordance with the same.

SO ORDERED.

---

5. Defendants assert at page 6 of their April 3, 1981 opposition that their "use of the designation PURO to refer to plaintiff's products clearly denotes distinction rather than confusion." They refer to the testimony on cross of Mr. Héctor Bruno, presented by plaintiff as an expert in marketing of oil, fuel and air filters, who declared that since PURO in the equivalency table of defendants' filters refers to a Purolator filter, he would assume that defendants' filters are not Purolator filters. (Transcript of March 13, 1981, pp. 37–40).

Mr. Bruno, however, is precisely that—an expert in marketing of filters. Defendants would have purchasers go through the following mental gymnastics to grasp the "distinction" between the products: Since defendants' item is designated PURO and the equivalency table shows it can be replaced by a Puro product which the buyer knows refers to a Purolator product, then he can assume that the Puro item before him is not a Purolator product. This is defendants' idea of distinction vis a vis confusion.