PUROLATOR, INC., Plaintiff-Appellee,

v.

EFRA DISTRIBUTORS, INC., Enrique Franceschini and Enrique Franceschini, Jr., Defendants-Appellants.

No. 81–1871.

United States Court of Appeals, First Circuit.

Argued May 6, 1982.
Decided Sept. 8, 1982.

---

Luis N. Blanco Matos, Hato Rey, P. R., for defendants-appellants.

Allen I. Rubenstein, with whom Charles B. Spencer, William T. Boland, Jr., Kenyon

& Kenyon, New York City, Patrick J. Wilson, and O'Neill & Borges, Hato Rey, P. R., were on brief, for plaintiff-appellee.

Before PHILLIPS,* Senior Circuit Judge, BOWNES and BREYER, Circuit Judges.

PHILLIPS, Senior Circuit Judge.

This appeal arises out of the issuance by the district court of a permanent injunction against the defendant-appellant, EFRA Distributors, Inc. and its two principal owners, Enrique Franceschini and Enrique Franceschini, Jr. (herein collectively referred to as "EFRA"). The district court found that the defendants' use of a trademark infringed the trademark of plaintiff and otherwise violated the rights of the plaintiff under the Lanham Act, 15 U.S.C. §§ 1051–1127, and the common law. We affirm.

I

We discuss here only those facts necessary to a resolution of the issues raised on appeal. Reference is made to the comprehensive opinion of District Judge Carmen Consuelo Cerezo, published as *Purolator, Inc. v. EFRA Distributors, Inc.,* 524 F.Supp. 471 (D.P.R.1981), for a more detailed recitation of the pertinent facts and conclusions of law underlying the district court's determination.

Plaintiff-appellee Purolator, Inc., a Delaware Corporation, has sold and distributed automobile filters and related products in Puerto Rico for approximately 30 years. The Purolator name has been used as a federally registered trademark since 1926. It is undisputed that the particular design of Purolator's trademark, which was found to have been infringed, has been used in commerce since at least as early as March of 1973. See 524 F.Supp. at 473. Purolator sold approximately $1.2 million worth of filters and other products to its exclusive distributor in Puerto Rico in 1980.

Defendant-appellant EFRA is a Puerto Rico corporation controlled by the codefendants Enrique Franceschini and Enrique

Franceschini, Jr. EFRA was first established in 1965 by the elder Franceschini and since then has done business as a manufacturers' representative and distributor of auto accessories such as tires, batteries and filters. The company's average annual sales are approximately $6,000,000.

In 1980, EFRA began to sell its own brand of oil and air auto filters under the name "Puro Filter," selling some $16,000 worth of the filters between September 1980 and February 1981. These filters were manufactured in Illinois by Rex Manufacturing Co. and then shipped to EFRA in Puerto Rico. The packaging, the red, white and blue color scheme, the lettering style, and the use of two parallel bars in the design of the appellant's filters were all similar to those employed by Purolator. The degree of similarity was a source of dispute between the parties, with EFRA pointing out that the likeness was not exact in any case. Appellee Purolator contended, however, that the similarities were enough to create a likelihood of confusion, and the district court agreed. *See* 524 F.Supp. at 474–75, 476–77.

The similarities between the products were not Purolator's only concern. EFRA's filters sold at 10–25 percent less than Purolator's. Comparative tests on the two products under standardized industry procedures indicated that EFRA's Puro Filters were decidedly inferior in quality to Purolator's filters. These tests showed that, due to defects in workmanship and materials, Puro Filters were actually more likely to cause damage to an engine than to filter its oil satisfactorily.

The plaintiff-appellee first became aware of EFRA's product in September 1980, at a Gasoline Retailers' Association trade show where EFRA first unveiled its new filters. EFRA's Puro Filters were displayed at a booth directly across from Purolator's booth. The district court credited testimony that employees of EFRA asserted that the filters were manufactured by Purolator. *See* 524 F.Supp. at 475. Nowhere on the

* Of the Sixth Circuit, sitting by designation.

Puro Filter or its package was there an indication of the true manufacturer, Rex Manufacturing. The packaging contained a standard chart indicating which model filters of other manufacturers could be interchanged with the Puro Filter; on these charts, as was common with the charts of other manufacturers and with standard industry usage, Purolator was abbreviated as "Puro."

Since their debut at the trade show, Puro Filters have been sold throughout Puerto Rico to over one thousand retailers, including gas stations, auto parts and mass merchandise stores. 524 F.Supp. at 473. Plaintiff-appellee filed this action December 31, 1980, alleging that the use by defendant of the "Puro Filter" trademark constituted an infringement of Purolator's trademark, under 15 U.S.C. §§ 1114–18, a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125, a violation of the common law of unfair competition, and an infringement of trademark under the common law of Puerto Rico. In the meantime, EFRA had successfully obtained, over the challenge of Purolator, a trademark in the name "Puro" from the Department of State Trademark Office of the Commonwealth of Puerto Rico, on March 2, 1981. A hearing was held on the preliminary injunction. Both sides presented testimony and depositions. The parties filed a stipulation agreeing to consolidate the preliminary injunction hearing with the permanent injunction and waived any further rights to a hearing. On September 29, 1981, the district court issued a memorandum opinion and order upholding the claims of plaintiff and enjoining any further use by the defendant of the term "Puro" in connection with any automotive accessory products. From this decision, EFRA appeals, challenging the district court's assertion of jurisdiction, several of the underlying findings of fact of the court, and its legal conclusions on the issues of infringement, unfair competition and false designation of origin.

## II

Appellant alleges that the district court lacked jurisdiction over the subject matter of this dispute because goods were sold by appellant only in Puerto Rico and not in interstate commerce. Appellant does not contend that the district court did not have diversity jurisdiction over this controversy, under 28 U.S.C. § 1332. We construe the argument of appellant to be a challenge to the applicability of the federal trademark laws to this action. Under 28 U.S.C. § 1338, the federal district courts have original jurisdiction of civil actions arising under the trademark laws and of related state law claims of unfair competition. The Lanham Act provides that any person who shall "use in commerce" a reproduction or a colorable imitation of a registered trademark shall be liable to the registrant of the mark in a civil action for infringement. 15 U.S.C. § 1114. The Act also provides a remedy for those damaged by another's false designation of origin of a good in commerce. 15 U.S.C. § 1125. In addition, it is clear that the Act extends to the full reach of Congress under the Commerce Clause, Article I, § 8, clause 3 of the Constitution. The Act provides that "[t]he word 'commerce' means all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127.

EFRA contends that, although its filters are manufactured in Illinois and shipped to Puerto Rico, its mark is not used in interstate commerce, because its sales are entirely within Puerto Rico and the mark is not displayed externally at any time during the shipment from Illinois. This court has held that interstate shipment, even without a sale, is a "use in commerce" within the meaning of the Lanham Act. *New England Duplicating Co. v. Mendes*, 190 F.2d 415, 417 (1st Cir. 1951) (shipment of plaintiff's machine with trademark affixed was sufficient use in commerce to entitle him to registration of the mark under the Lanham Act). EFRA places great weight on the fact that the mark was not visible during the interstate shipment, since the filters were shipped in cartons bearing the logo of the shipping company and not the Puro Filter mark. The language of the statute does not appear to admit of any such distinction. It provides that "a mark shall be

deemed to be used in commerce ... on goods when it is placed in any manner on the goods or their containers ... and the goods are sold or transported in commerce." 15 U.S.C. § 1127.[1]

We conclude that the distinction advocated by EFRA is without merit. It is well established that "jurisdiction exists to grant relief under the Lanham Act if a defendant's activities although wholly intrastate tend to have a damaging effect on plaintiff's federally protected interstate business." *Tiffany & Co. v. Boston Club, Inc.*, 231 F.Supp. 836, 841 (D.Mass.1964). Appellant relies on several cases in which district courts in this Circuit have found that a defendant's wholly intrastate sales were not in commerce and did not have a substantial effect on interstate commerce, notwithstanding that the goods were shipped interstate. *See Peter Pan Restaurants, Inc. v. Peter Pan Diner, Inc.*, 150 F.Supp. 534, 536 (D.R.I.1957); *Libby, McNeil & Libby v. Libby*, 103 F.Supp. 968, 969 (D.Mass.1952); *R. P. Hazzard Co. v. Emerson's Shoes, Inc.*, 89 F.Supp. 211, 216 (D.Mass.1950); *Samson Crane Co. v. Union National Sales*, 87 F.Supp. 218, 221 (D.Mass. 1949), *aff'd*, 180 F.2d 896 (1st Cir. 1950). However, an adverse effect on the sales or goodwill of one whose trademark is used in interstate commerce is a sufficiently substantial effect on interstate commerce to entitle the registrant to invoke the protection of the Lanham Act, even if the sales of defendant are wholly intrastate. *See, e.g., Coca-Cola v. Stewart*, 621 F.2d 287, 290–91 (8th Cir. 1980); *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 488 (5th Cir. 1971); *Franchised Stores of New York, Inc. v. Winter*, 394 F.2d 664, 668–69 (2d Cir. 1968); *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 120 (9th Cir.), *cert. denied*, 391 U.S. 966, 88 S.Ct. 2037, 20 L.Ed.2d 879 (1968); *Lyon v. Quality Courts United, Inc.*, 249 F.2d 790, 795 (6th Cir. 1957); *Kampgrounds of Amer-*

ica, Inc. v. North Delaware A–OK Campground, Inc.*, 415 F.Supp. 1288 (D.Del.1976), *aff'd*, 556 F.2d 566 (3d Cir. 1977). It is undisputed that the parties sell their filters in the same markets in Puerto Rico and compete for many of the same customers. The district court found that EFRA's products are inferior to Purolator's. We conclude that these facts, together with Purolator's interstate use of its trademark, establish a "substantial impact" on interstate commerce well within the scope of the Lanham Act.

### III

Appellant also contests the finding of infringement by the district court. The key element in any infringement action is likelihood of confusion. 15 U.S.C. § 1114(1); *Pignons S. A. deMecanique v. Polaroid Corp.*, 657 F.2d 482, 486–87 (1st Cir. 1981); *Fisher Stoves, Inc. v. All Nighter Stove Works*, 626 F.2d 193, 194 (1st Cir. 1980); *Valmor Products Co. v. Standard Products Corp.*, 464 F.2d 200, 202 (1st Cir. 1972). Likelihood of confusion is a finding of fact to be reviewed under the clearly erroneous standard of Fed.R.Civ.P. 52(a). *Fisher Stoves, supra*, 626 F.2d at 193–94; *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 377 (1st Cir. 1980). This is true even where the conclusions of the district court are based on an examination of documents or of real evidence such as the products themselves. *Keebler Co., supra*, 624 F.2d at 377.

In the present case, the district court relied on much more than an examination of the competing products and their packaging. There is no need to restate in detail the court's thorough enumeration of the factors to be considered and its analysis of the evidence thereunder. The finding of Judge Consuelo Cerezo of a likelihood of confusion is well supported by the following evidence: the similarities in the packaging

---

1. Appellee also refers to testimony of Enrique Franceschini, Jr., that advertising brochures were mailed to the United States. It is not clear from his testimony, however, whether Franceschini is speaking hypothetically. Inter-

state advertising might be additional evidence of use of the mark in commerce, but such evidence is not material to the disposition of this case.

of the products and in the styling of the trademarks, which include nearly identical lettering styles, similar parallel lines and similar color schemes of red, white and blue, 524 F.Supp. at 474, 476; the similarities in the products themselves, such that differences in quality and workmanship would not be apparent externally, 524 F.Supp. at 476; the wide range of consumers to which the products were sold, ranging from the expert to the "distracted, the uninformed, the ignorant, the unconscious and the nondiscriminating," 524 F.Supp. at 477; the strong and direct association by the public and the industry of the term "Puro" with the products of appellee, such that "Puro" was the standard shorthand reference and accepted abbreviation for Purolator, 524 F.Supp. at 475, 476; and the intent of the appellant in adopting the mark "Puro", which finding was based partly on a lack of credibility in the appellant's explanation of its reasons for choosing the mark "Puro", 524 F.Supp. at 477–78, and partly on testimony, presented by the plaintiff and disputed by the defendant, about an incident at the gasoline trade show in which the defendant's salesman asserted to a witness that Puro Filters were manufactured by Purolator, 524 F.Supp. at 474, 477–78. All of these findings are supported by substantial evidence in the record, and thus the finding of a likelihood of confusion, itself supported by substantial evidence, is not clearly erroneous. This finding, in turn, justifies the conclusion of the district court that EFRA's mark infringed on Purolator.

■ This court has noted that the principles governing infringement actions under federal law also control the determination of the issue under the law of Puerto Rico. *See Keebler Co., supra,* 624 F.2d at 372. *See also Cooperativa Cafeteros v. Colon Colon,* 91 P.R.R. 361 (1964), wherein the Supreme Court of Puerto Rico relied on principles enunciated in federal authorities and on federal court development of the doctrine of secondary meaning to find that the acts of defendant in that case constituted infringement and unfair competition under the law of Puerto Rico. Given our conclusions set forth above, we need not determine what the outcome of an infringement action under Puerto Rico law would be, nor what effect EFRA's Puerto Rico trademark, obtained over opposition of Purolator, would have, because it is clear that the rights of EFRA under Puerto Rico law cannot circumscribe the rights of Purolator to protection for its trademark under the federal trademark laws. While the Lanham Act does not preempt all state regulation of trademarks, this court has noted that "[t]he Supremacy Clause [Art. VI, clause 2 of the Constitution] bars . . . state statutes or doctrine that would permit the sort of confusing or deceptive practices the draftsmen of the Lanham Act sought to prevent." *Keebler Co., supra,* 624 F.2d at 372, n. 3. *Accord, Golden Door, Inc. v. Odisho,* 646 F.2d 347, 352 (9th Cir. 1980); *Mariniello v. Shell Oil Co.,* 511 F.2d 853, 858 (3rd Cir. 1975); *Burger King of Florida, Inc. v. Hoots,* 403 F.2d 904, 908 (7th Cir. 1968); *Dawn Donut Co. v. Hart's Food Stores, Inc.,* 267 F.2d 358, 365 (2d Cir. 1959). Under 15 U.S.C. §§ 1065 and 1115, the right of Purolator to use its trademark is an exclusive right which can be asserted against any infringing mark, subject to defenses in those statutory sections not applicable here.[2]

## IV

■ Even if the challenge of EFRA to the finding of infringement had been successful, EFRA still would need to contend with the finding of the district court of unfair competition. Section 43(a) of the Lanham Act provides a remedy for those damaged by a "false designation of origin" by a competitor. 15 U.S.C. § 1125(a). This section creates a federal statutory tort broader in scope than the common law of

---

2. EFRA asserts that Purolator has abandoned the mark "Puro". 15 U.S.C. § 1115(b)(2). However, Purolator has not abandoned the mark "Purolator", and it is this mark that EFRA's "Puro" mark has infringed, contrary to the exclusive statutory right of Purolator. Thus any alleged abandonment of the mark "Puro" is irrelevant to the present determination.

unfair competition and the law of infringement. *See Keebler Co., supra,* 624 F.2d at 372–73. It is designed to reach, among other things, attempts to appropriate the goodwill associated with a competitor's trademark by means of confusingly similar marking and packaging, which would create the impression that the products of the defendant originated with the plaintiff. Again, a showing that the marks or packaging of defendant create a likelihood of confusion with the products of the plaintiff will be a key to establishing a claim of false designation of origin. *Pignons, supra,* 657 F.2d at 493.

■ In the present case, all the facts referred to in Part III of this opinion which serve to establish infringement and the likelihood of confusion in the infringement context, are persuasive as well in the context of a claim of false designation of origin. Of particular relevance to this claim is the fact that the packaging of EFRA's "Puro Filters" contained no indication whatsoever of the true identity of the manufacturer, Rex Manufacturing Co., nor of the owner of the brand, EFRA. *See* 524 F.Supp. at 474. Clear and prominent display of the name of the true manufacturer, while not determinative, can substantially mitigate any confusion caused by allegedly innocent or unintentional similarities in the two markings of the two products. *See Pignons, supra,* 657 F.2d at 487, and cases cited therein.

■ Also of special relevance to this claim is the finding of intent by the court. *See* 524 F.Supp. at 477–78. While intent is not a necessary element of a false designation of origin claim, it is relevant inasmuch as intent to imitate enhances the likelihood of successfully inducing confusion among consumers. *Baker v. Simmons Co.,* 307 F.2d 458, 465 (1st Cir. 1962); *accord, Harlequin Enterprises Ltd. v. Gulf and Western Corp.,* 644 F.2d 946 (2d Cir. 1981).

■ The record thus amply supports the conclusion of the district court that EFRA violated the rights of Purolator under 15 U.S.C. § 1125(a). We, therefore, do not reach the issue of whether the outcome would be the same under the law of unfair competition of Puerto Rico, although we note again that the Supreme Court of Puerto Rico has relied on the federally developed principles of unfair competition under the Lanham Act in construing its own law of unfair competition. *Cooperativa Cafeteros, supra,* 91 P.R.R. at 380–89.

V

Appellant also attacks the scope and content of the injunctive decree, arguing first that the word "Puro" is a common descriptive Spanish adjective, and that the plaintiff should not be permitted to remove it from the commercial lexicon. We note that the injunction does not grant Purolator an exclusive right to use the term "puro", but that rather it enjoins further use of the term by EFRA in connection with automotive accessory products, as a remedy for EFRA's use of the term in a confusingly similarly manner so as to infringe the trademark of Purolator and create a false designation of origin.

■ The district court properly rejected argument of appellant that "Puro Filter" was a bilingual term meaning "pure filter" and as such was unprotectible because it was "merely descriptive" under the Lanham Act. We hold this contention to be without merit for the reasons stated by the district court. *See* 524 F.Supp. at 477–78.

■ Appellant also contends that the term "Puro" is commonly used in Spanish as a superlative intensifier, somewhat equivalent to the English word "super," and that this word (notwithstanding EFRA's successful registration of it in Puerto Rico) should not be subject to the exclusive appropriation of any one party. This contention also must fail. It is true that self-laudatory, superlative words are inherently weak as trademarks. *See, Valmor Products Co. v. Standard Products Corp.,* 464 F.2d 200, 202 (1st Cir. 1972) ("Valmor" as a version of "value more" self-laudatory but protectible); *Loctite Corp. v. National Starch and Chemical Corp.,* 516 F.Supp. 190 (S.D.N.Y.1981) ("Super Glue" generic and not pro-

tectible); *Eaton Allen Corp. v. Paco-Impressions Corp.*, 405 F.Supp. 530 (S.D.N.Y. 1975) ("super" inherently weak as a trademark); *Exquisite Form Industries, Inc. v. Exquisite Fabrics of London*, 378 F.Supp. 403 (S.D.N.Y.1974) ("exquisite" inherently weak). However, as the district court found, the term "Puro" has become associated with Purolator in the industry, and has acquired a strong secondary meaning in the context of automotive accessory products. 524 F.Supp. at 475. While it is true that no amount of secondary meaning will entitle a *generic* term to protection under the trademark laws, *Miller Brewing Co. v. Falstaff Brewing Corp.*, 655 F.2d 5, 7–8 (1st Cir. 1981), a descriptive term can become protectible if it has acquired sufficient secondary meaning as to be associated with a particular producer. *Keebler Co. supra*, 624 F.2d at 374; *S. S. Kresge Co. v. United Factory Outlet, Inc.*, 598 F.2d 694, 696 (1st Cir. 1979); *Valmor Co., supra*, 464 F.2d at 202. *A fortiori*, the Lanham Act does not forbid the issuance of an injunction against the use of such a term when it has been used so as to infringe a valid, registered trademark.

▪▪▪ Finally, appellant contends that the injunction is overly broad in that it extends to products, such as batteries not presently manufactured under a Purolator trademark. However, it is well settled that "[t]he protection which the law gives the owner of a trade-mark is not confined to the goods upon which it is, or has been, used by the owner of it but extends to products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Baker v. Simmons Co., supra*, 307 F.2d at 462 (citations omitted; see generally cases cited therein at 462–63).

## VI

EFRA raises several challenges to the factual findings of the district court. EFRA had originally raised these claims in a Rule 59(e) motion to alter or amend judgment filed after the entry of final judgment. The district court denied this motion as untimely, because it was filed more than ten days after the entry of the preliminary injunction, which had issued several days before the final judgment. The district court also denied a motion for extension of the 30 days time period for appeal under Fed.R.App.P. 4(a). EFRA nonetheless filed an appeal, which Purolator moved to dismiss as untimely, because not within 30 days of the entry of the preliminary injunction. In an unpublished order entered on January 18, 1982, this court overruled the motion of Purolator, finding that the district court incorrectly determined that the ten day time period within which to file a Rule 59 motion began to run at the time of the entry of the preliminary injunction rather than at the date of final judgment. This court then decided that both the Rule 59(e) motion (which more properly should have been a Rule 52(b) motion, subject to the same time period, since it requested amended and additional findings of fact) and the appeal were timely filed within their respective time periods after the final judgment.

Appellant does not request that the district court now rule on its Rule 59 motion, but only that this court consider all the arguments raised therein. We have carefully considered the arguments raised in the brief of appellant and in its original motion before the district court. Except for a few issues, such as the scope of the injunction, which already have been considered above, the motion primarily involves a challenge to the findings of fact of the district court, alleging that in several particular instances the district court misinterpreted the evidence before it or drew the wrong conclusions from facts and evidence. None of these arguments persuade us that the district court was clearly erroneous in its findings of fact. Fed.R.Civ.P. 52(a). Furthermore, none of the proposed additional findings of fact, even if all should be taken as true, would warrant any change in the outcome.

For these reasons, the judgment of the district court is affirmed.