**MOBIL OIL CORPORATION**

v.

**AUTO–BRITE CAR WASH, INC., et al.**

Civ. A. No. 81–2106–Z.

United States District Court,
D. Massachusetts.

Feb. 13, 1984.

Robert M. Gault, Mintz, Levin, Cohn, Glovsky & Popeo, Boston, Mass., Jeffrey Conciatori, Kenneth E. Newman, Donovan, Leisure, Newton & Irvine, New York City, for plaintiff.

Robert Bush, Harvey B. Heafitz, Newton, Mass., for defendant.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

This is an action for trademark infringement, unfair competition, and unfair and deceptive trade practices, as well as for breach of the agreements between plaintiff Mobil Oil Corporation ("Mobil") and defendant Auto-Brite Car Wash, Inc. ("Auto-Brite"). It is based upon Auto Brite's actions in selling non-Mobil gasoline allegedly under the Mobil trademark without Mobil's consent. Auto-Brite denies liability and in its counterclaims I and VI alleges that Mobil breached agreements between the parties. Mobil has moved for summary judgment on all the *remaining* counts of its complaint and those two counts of defendant's counterclaim.[1]

The following facts are not in dispute. On June 1, 1978, Mobil and Auto-Brite entered into a Retail Dealer Contract under which Mobil agreed to supply and Auto-Brite to buy certain quantities of gasoline and other products.

Paragraph 6 of the contract provided that:

Buyer shall use Seller's trademarks and brand names to identify and advertise Seller's products and shall not use such trademarks and brand names for any other purpose. Buyer shall ... not use Seller's trademarks or brand names in connection with the storage, handling, dispensing or sale of any adulterated, mixed or substituted products.... Any violation of the provisions of this paragraph by Buyer shall give Seller the right to immediately terminate this Contract. On any termination of this Contract, Buyer shall cause all references to Seller and all use of Seller's color schemes, trademarks, brand names, slogans and advertising to be discontinued....

Under a "Sign and Equipment Rent Rider" to the contract, Mobil leased two signs (together with other equipment) to Auto-Brite. The rider provided that the lessee should "use it [the equipment] solely for Lessor's products on the premises," and that "[o]n termination of the Retail Dealer Contract ... Lessor may remove the equipment ... or Lessor may abandon said equipment."

Mobil and Auto-Brite also entered into an "Equipment Loan Agreement" on June 1, 1978 under which Mobil lent ten Mobil round pumps (and two light units) to Auto-Brite. Paragraph 1 of the agreement provides that "Borrower shall, with respect to the equipment ... (c) make no additions thereto or alterations therein without Company's prior written consent, (d) keep legible and visible all trademarks and signs of Company ... and (h) use it solely for Company's products." Under Paragraph 3 Auto-Brite was obligated "[o]n the termination of this contract for any reason, ... promptly [to] return the equipment to Company. If not so returned, Company may remove it without liability ... or Company may abandon all or any part thereof."

On September 19, 1980, Mobil sold Auto-Brite two Mobil round pumps for $420. A Round Pump Repurchase Agreement of the same date provided that "upon final termination of all product contracts between CUSTOMER and MOBIL, CUSTOMER shall forthwith sell to Mobil all 'Mobil Round Pumps' owned by CUSTOMER," and set a formula for the repurchase price.[2]

---

1. The Court dismissed the four other counts of defendant's original counterclaim on September 14, 1982. Defendants' motion to amend was allowed only insofar as it added counts designated XII and XIII, alleging Mobil's failure to pay certain credit card charges. The parties agreed at oral argument, however, that these are not addressed by Mobil's current motion for summary judgment. Nor is the question of damages now before me.

2. On the same date, Mobil sold Auto-Brite an oil carousel for $1.05, under a similar bill of sale and "Mobil Designed Equipment Repurchase Agreement."

The language of the contracts establishes Mobil's right to possession of both the ten leased and two "sold" pumps; and Auto-Brite's right to payment for the two which were "repurchased" by Mobil under the formula set forth. That question of payment is part of the issue of damages not now before me.

In a letter dated May 3, 1978, Mobil granted Auto-Brite a competitive allowance of 1.5 cents for each gallon of gasoline it purchased pursuant to the Retail Dealer Contract. The letter stated that "You [Auto-Brite] have acknowledged that this allowance may be decreased or withdrawn by Mobil at any time upon not less than thirty (30) days prior written notice to you." In a letter dated July 19, 1979, Mobil notified Auto-Brite that the competitive allowance would be withdrawn as of August 31, 1979. Auto-Brite had the right to cancel the Retail Dealer Contract if the competitive allowance was withdrawn, but it did not do so.

Auto-Brite concedes the existence and validity of Mobil's registered trademarks. Mobil concedes that at the time of the events at issue, the round pump was not registered as a trademark, although the Mobil pump is in a distinctive shape associated with Mobil.

Auto-Brite admits that around April 4, 1981, it began to buy gasoline from suppliers other than Mobil, that it sold this gasoline through the round pumps supplied by Mobil, and that it continued to accept Mobil credit cards as payment for this gasoline. It further concedes that it received from Mobil a notice, dated July 23, 1981, that Mobil was immediately terminating the parties' franchise relationship, including the Retail Dealer Contract with its riders, and the Equipment Loan Agreement. The parties agree that upon receipt of the notice Auto-Brite covered the word "Mobil" on the pumps with masking tape and stopped accepting Mobil credit cards in payment.[3] However, it did not remove the two large "Mobil" signs until about August 13, 1981, nor did it cease to sell other Mobil products in containers clearly marked Mobil.

## I. Mobil's Claims

■ Counts I and II of the complaint allege violations of sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), respectively. Count III alleges common law unfair competition and trademark infringement; and Count VII, violation of Mass.Gen.Laws ch. 93A, § 11. Count VIII alleges breach of the agreements between Mobil and Auto-Brite.[4] At oral argument defendant agreed that as to the first four of those counts, there was no dispute of fact precluding summary judgment for Mobil with respect to the time prior to the termination of the contract. Defendant has, however, sought to raise the defense of laches with respect to that period claiming that Mobil was notified of the alleged violation in mid-April but took no action until July. The Court previously denied Auto-Brite's motion to amend its answer by adding laches as an affirmative defense. In any event, Auto-Brite has not made the required showing of unreasonable or prejudicial delay. *See Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F.Supp. 1189 (E.D.N.Y.1983) (prejudice a necessary element of laches); *Jordan K. Rand, Ltd. v. Lazoff Bros., Inc.*, 537 F.Supp. 587 (D.P.R.1982) (filing of complaint three months after becoming aware of defendant's act not unreasonable delay). Mobil is therefore clearly entitled to summary judgment on Counts I–III and VII insofar as they are based on defendant's actions through July 23, 1981.

Mobil raises no claim of trademark infringement after August 13, 1981 when defendant Auto-Brite removed all signs. As a result, the parties' dispute as to the appropriateness of summary judgment for Mobil on its Counts I–III and VII concerns only the three-week period from July 23 to August 13. Auto-Brite contends that after it received notice of the contract termination, it took steps to insure that its sale of gasoline could not be construed as an attempt to sell non-Mobil gasoline as Mobil gasoline and that the facts pertaining to its alleged infringement of Mobil's mark are therefore in dispute.

---

**3.** The plaintiff during oral argument conceded for purposes of this motion that the taping occurred.

**4.** The Court allowed defendant's motion to dismiss as to Counts IV–VI (raising various state law claims) in its Order of December 7, 1981.

Summary judgment is often inappropriate in infringement cases because they present a complicated array of factual issues requiring substantial development. Where, however, the facts have been fully developed through pleadings, affidavits, depositions and exhibits, and the legal issues are squarely presented, summary judgment is appropriate. *See, e.g., Pignons S.A. de Mecanique de Precision v. Polaroid Corporation,* 498 F.Supp. 805 (D.Mass.1980), *aff'd,* 657 F.2d 482 (1st Cir. 1981); *Beef/Eater Restaurants, Inc. v. James Burroughs Ltd.,* 398 F.2d 637 (5th Cir.1968); *Community of Roquefort v. William Faehndrich, Inc.,* 303 F.2d 494 (2d Cir.1962).

While the causes of action asserted in Counts I–III and VII vary, the essential element of each is that defendant's use of plaintiff's mark be likely to cause confusion among customers as to the source of its product. *Purolator, Inc. v. EFRA Distributors, Inc.,* 687 F.2d 554 (1st Cir.1982). The test is whether an appreciable number of ordinarily prudent purchasers was likely to be misled or confused as to the source of the goods in question. *McGregor-Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126 (2d Cir.1979). In this Circuit, likelihood of confusion is considered a question of fact. *Coca-Cola Co. v. Snow Crest Beverages, Inc.,* 162 F.2d 280, 283 (1st Cir.), *cert. denied,* 332 U.S. 809, 68 S.Ct. 110, 92 L.Ed. 386 (1947); *see also Purolator, Inc. v. EFRA Distributors, Inc.* 687 F.2d 554 (1st Cir.1982). However it is characterized, where there is no genuine issue as to the existence of a substantial likelihood of confusion, the court may grant summary judgment.

■ There is no dispute between the parties as to what Auto-Brite did between July 23 and August 13, 1981: in a station displaying Mobil signs and selling Mobil oil and other products in containers with the Mobil mark, it sold non-Mobil gasoline from Mobil's distinctive round pumps on which the name "Mobil" had been covered with masking tape. It no longer accepted Mobil credit cards, but took no other steps to inform customers that the gasoline was not Mobil. The undisputed facts establish the requisite likelihood of confusion[5] during the period from July 23 to August 13, 1981.

Defendant clearly used Mobil's registered trademark without its consent in connection with the sale or offering for sale of goods. Given that such use was likely to cause confusion or mistake, or to deceive, plaintiff has established defendant's liability under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). *Franchised Stores of New York, Inc. v. Winter,* 394 F.2d 664 (2d Cir.1968).

■ The essence of a common law unfair competition claim under Massachusetts law is the appropriation of a competitor's business to his injury. *Quabaug Rubber Co. v. Fabiano Shoe Co.,* 567 F.2d 154 (1st Cir. 1977). Auto-Brite sold non-Mobil gasoline from Mobil-supplied round pumps to customers who drove into the station where Mobil signs were displayed and Mobil products other than gasoline were sold. Its admitted conduct constitutes an appropriation of business from Mobil. Because Auto-Brite's conduct constitutes unfair competition as defined in case law, it also entitles Mobil to recovery under Mass.Gen. Laws ch. 93A, § 11 as a person engaged in commerce who suffered a loss from the use of an unfair method of competition or an unfair trade practice. *See Levings v. Forbes & Wallace, Inc.,* 8 Mass.App. 498, 396 N.E.2d 149 (1979).

---

**5.** Auto-Brite contends that Mobil had the obligation to remove the signs and pumps upon termination of the contract and cannot complain of injury resulting from its failure to do so. The terms of the parties' agreements place no such obligation on Mobil. Under the Equipment Loan Agreement covering ten of the pumps, Auto-Brite was required to return them promptly to Mobil upon termination of the contract. The Pump Repurchase Agreement relating to the other two pumps provided that Auto-Brite should sell the pumps "forthwith" to Mobil upon termination. The Sign and Equipment Rider provided that Mobil could remove or abandon the signs at its option.

■ Finally, Auto-Brite's actions constituted a violation of § 43(a) of the Lanham Act, which makes liable any person who falsely designates the origin of goods. *See Purolator, Inc. v. EFRA Distributors, Inc.*, 687 F.2d 554 (1st Cir.1982) (§ 43(a) imposes liability for the appropriation of goodwill associated with a competitor's trademark by means of confusingly similar marking which would create the impression that the products of the defendant were those of plaintiff); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366 (1st Cir.1980) (§ 43(a) prohibits a competitor from "palming off" his goods as those of another by means of confusing or misleading labeling of his product).

■ Mobil in Count VIII of its complaint alleges that Auto-Brite breached the franchise agreement between the parties. The term of the contracts constituting this agreement are unambiguous and the facts concerning the alleged breaches are not in dispute, making summary judgment appropriate, *Tokio Marine Fire Ins. Co. v. McDonnell Douglas Corp.*, 617 F.2d 936 (2d Cir.1980). The Equipment Loan Agreement expressly provided that Auto-Brite could use the leased pumps solely for Company's products. Auto-Brite does not dispute that it sold non-Mobil gasoline from the pumps. Likewise, Auto-Brite in selling non-Mobil gasoline under Mobil signs clearly used Mobil's trademarks to identify products which were not Seller's, in breach of the Retail Dealer Contract.

Mobil is therefore entitled to summary judgment on all remaining counts of its complaint.

## II. Defendant's Counterclaims

In Count I of its counterclaim, defendant alleges that Mobil breached the Retail Dealer Contract by delivering to Auto-Brite gasoline it had not in fact manufactured. It contends that the references to "Seller's products" in the paragraph relating to trademarks mean that Mobil was required by the contract to deliver only "its own" products to Auto-Brite. However, the paragraph specifically relating to products to be delivered provides that they "shall be those marketed and used by Seller at times of deliveries for similar dealers in Buyer's area, all as determined by Seller." There is no ambiguity about this provision, nor does Auto-Brite allege any breach thereof. Defendant's interpretation of the reference to "Seller's products" simply does not amount to the showing of ambiguity necessary to withstand summary judgment.

■ Count VI of defendant's counterclaim alleges an unfair and deceptive practice in violation of Mass.Gen.Laws ch. 93A, § 11. The president of Auto-Brite, Mr. Kanieff, alleges that during negotiations over the competitive allowance agreement a Mobil representative told him that Mobil would not cancel the allowance so long as Auto-Brite remained a good dealer. Defendant contends that this alleged misstatement, inducing him to enter the contract, violated ch. 93A.[6]

Mobil denies that such a statement was ever made, and points to the provision in the written contract stating that the allowance could be withdrawn at any time upon thirty days notice. It contends that the parol evidence rule bars any evidence of such an alleged oral promise contradicting the unambiguous language of the written agreement; and that even assuming the statement was made, the statement does not constitute an act within the scope of 93A's prohibition.

An action under ch. 93A is independent of traditional tort or contract concepts, *Linthicum v. Archambault*, 379 Mass. 381, 398 N.E.2d 482 (1979); and the First Circuit has suggested that the parol evidence rule, part of the law of contracts, does not apply in actions under 93A. *See Capp Homes v. Duarte*, 617 F.2d 900, 902 n. 1 (1st Cir.1980).

6. In its brief, defendant claims that the withdrawal of the allowance also violated 93A. At oral argument defendant described the Count only as encompassing the misstatement, and I accept that characterization.

Because there is conflicting admissible evidence as to whether the statement was made, Mobil is entitled to summary judgment only if the statement did not as a matter of law constitute an unfair or deceptive act or practice in violation of ch. 93A. In defining the "unfair and deceptive" practices made unlawful by the act, the Supreme Judicial Court of Massachusetts has used the standard of unfairness approved by the United States Supreme Court in *FTC v. Sperry and Hutchinson Co.*, 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972). Under this standard, the three factors to be weighed in determining whether a particular practice is unfair are:

"1. Whether the practice, without necessarily having been previously considered unlawful, offends public policy ... or whether in other words it is within at least the penumbra of some common-law, statutory or other established concept of unfairness;

2. Whether it is immoral, unethical, oppressive or unscrupulous;

3. Whether it causes substantial injury to consumers (or competitors or other businessmen)."

As Judge Kass put it in a case under § 11: "The objectionable conduct must obtain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. 498, 396 N.E.2d 149, 153. The existence of an unfair or deceptive act or practice is to be determined in the light of the policy of the statute and from the circumstances of each case. *Heller v. Silver-branch Const. Corp.*, 376 Mass. 621, 382 N.E.2d 1065 (1978).

In the circumstances present here, Mobil's act in making the statement (assuming it did) simply does not rise to the level of objectionable conduct the statute prohibits. Mr. Kanieff agreed in his deposition that he is an experienced businessman used to negotiating contracts, and described his experience with procedures for granting competitive allowances. He stated that he negotiated with Mobil over the franchise relationship for several months at between 6 and 12 meetings and that at his request some changes were made in the contracts after they had been drafted. He discussed his concern about the termination clause with the Mobil representative before signing the allowance letter. Presumably any oral statement that termination would be only for good cause could have been added to the written contract during that session. Kanieff does not allege that he requested such a change.

While Mobil's alleged misstatement indeed could have caused injury to Auto-Brite and perhaps have fallen within the penumbra of some concept of misrepresentation, in the circumstances here it does not amount to the sort of "immoral" or "oppressive" conduct (or the "level of rascality") 93A was designed to prevent; it does not as a matter of law amount to a violation of Mass.Gen.Laws ch. 93A.

Accordingly, Mobil's motion for summary judgment on Counts I, II, III, VII and VIII of its complaint and Counts I and VI of defendant's counterclaim is allowed.