782 F.2d 13
 20 Fed. R. Evid. Serv. 925
 Patricia FINN, Administratrix of the Estate of Edward Finn,
Plaintiff, Appellant,
v.
CONSOLIDATED RAIL CORPORATION, Defendant, Appellee.
Patricia FINN, Administratrix of the Estate of Edward Finn,
Plaintiff, Appellee,
v.
CONSOLIDATED RAIL CORPORATION, Defendant, Appellant.
 Nos. 85-1574, 85-1651.
 United States Court of Appeals,
First Circuit.
 Argued Dec. 4, 1985.
Decided Jan. 28, 1986.
 
 Elizabeth Mulvey with whom Philip J. Crowe, Jr. and Lubin & Meyer, P.C., Boston, Mass., were on brief for Patricia Finn.
 Michael A. Fitzhugh with whom Veronica J. Bailey and Fitzhugh & Ward, Boston, Mass., were on brief for Consol. Rail Corp.
 Before CAMPBELL, Chief Judge, BOWNES and BREYER, Circuit Judges.
 LEVIN H. CAMPBELL, Chief Judge.
 
 
 1
 Plaintiff Patricia Ann Finn, administratrix of the estate of Edward J. Finn, appeals from the entry of summary judgment against her in a Federal Employers Liability Act suit against the Consolidated Rail Corporation ("Conrail"). We affirm.
 
 I.
 
 2
 Prior to 1977, Conrail operated the commuter rail line from Needham, Massachusetts, to South Station in Boston, pursuant to a contract awarded by the Massachusetts Bay Transportation Authority ("MBTA"). In early 1977, the MBTA and Conrail failed to renegotiate this contract, and the MBTA contracted for the Needham run with the Boston & Maine Railroad ("B & M"). Conrail and the B & M thereafter entered into an agreement under which Conrail employees who had worked on the Needham run received an opportunity to "bid" for similar positions with the B & M.
 
 
 3
 Edward J. Finn, a Conrail passenger conductor on the Needham run, applied for a position as conductor with the B & M. As was their common practice, B & M arranged for an interview and physical examination. On June 14, 1977, Finn took and, it appears from the record, failed an eye test. On June 21, when the list of Conrail employees who were being "picked up" by the B & M was posted, Finn's name was not on it.
 
 
 4
 Over the next several days, Finn contacted a number of B & M officials in an effort to learn the reason for his rejection. He then enlisted the aid of his union representative, Claude MacGray. MacGray arranged a meeting for June 29, during which he and Finn met with Newton Wesley, B & M's Director of Personnel Administration, and Wesley's assistant, Dennis Coffey. The meeting between the four of them yielded no positive results.
 
 
 5
 Afterwards, however, MacGray and Coffey met privately to discuss Finn's situation. According to MacGray's deposition testimony, Coffey excused himself for a short period during this meeting. Coffey returned and said that he had made a telephone call, although MacGray did not recall whom Coffey purportedly called. In any event, MacGray testified that Coffey reported to him that a record-keeping error had occurred in which certain of Finn's employment records were mixed up with those of another Conrail employee with a similar name but a less enviable discipline record, and that the B & M had refused to hire Finn because it mistakenly believed that he had a tarnished discipline record. MacGray assumed that the mix-up was made by Conrail.
 
 
 6
 Coffey reportedly said that the error was now rectified and that Finn would be hired by the B & M if he passed another eye test. MacGray found Finn and told him that the matter had been resolved; that the rejection had resulted from the confusion of employment records, whereby a disciplinary violation attributable to another employee had accidentally been placed on Finn's record. As far as MacGray was concerned, Finn had been reinstated.[1]
 
 
 7
 Finn remained extremely depressed about the entire matter, however. On June 30, he went to his family physician. The physician, fearing that Finn was in danger of suffering a nervous breakdown, referred him to a psychiatrist. On July 1, the psychiatrist diagnosed Finn as suffering from a reactive depression, and recommended bed rest and medication. Finn's condition continued to worsen, however, and the psychiatrist soon recommended that Finn take a leave of absence from work. Finn did not return to work until September 6, 1977. He continued to receive psychiatric treatment, complaining of depression and feelings of inadequacy. Finally, on September 17, Finn went to the basement workshop in his home and, using a power saw, severed his entire hand above the wrist. He then tied his dog's leash to a pipe and hanged himself.
 
 
 8
 On July 22, 1980, Patricia Finn, as administratrix of her husband's estate, filed the instant FELA action against Conrail for wrongful death and emotional injuries, claiming that the alleged "record-keeping error" drove her husband to a nervous breakdown and suicide. Conrail filed a third-party complaint against the B & M. After more than four years of discovery, both Conrail and the B & M moved for summary judgment. The district court, relying on Bullard v. Central Vermont Ry., 565 F.2d 193 (1st Cir.1977), determined that there was no physical injury associated with Finn's emotional distress and ultimate suicide. It therefore allowed the summary judgment motions of both defendants on June 12, 1985, 622 F.Supp. 41, and dismissed the complaint. Plaintiff has appealed from the entry of summary judgment in favor of defendant Conrail.[2]II.
 
 
 9
 Under Fed.R.Civ.P. 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment bears the burden of demonstrating that there is no disputed issue of fact which is both "genuine" and "material." Taylor v. Hercules, Inc., 780 F.2d 171, 174 (1st Cir.1986); Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir.1975), cert. denied, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). A "genuine" issue is one for which there is "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn, 523 F.2d at 464, quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). A "material" issue is one that "affects the outcome of the litigation." Pignons S.A. de Mecanique v. Polaroid Corp., 657 F.2d 482, 486 (1st Cir.1981). In reviewing the district court's decision we must, of course, view the record in the light most favorable to the party opposing the motion and indulge all inferences favorable to that party. General Office Products Corp. v. A.M. Capen's Sons, Inc., 780 F.2d 1077, 1078 (1st Cir.1986).
 
 
 10
 In the instant case, defendant Conrail is entitled to judgment as a matter of law since plaintiff failed to establish a "genuine issue of material fact" respecting an essential element of its proof. Conrail offered evidence negating the existence of a records mix-up such as plaintiff alleged, yet plaintiff has pointed to no admissible evidence to the contrary. Plaintiff's failure to do so is fatal, since Conrail's purported confusing of Finn's records with another's was the act of negligence upon which she based her case against Conrail.[3] While the court below granted summary judgment on another ground, we are entitled to sustain the district court's determination if there is an adequate alternative ground, and we do so because the ground we discuss appears to us to be a particularly obvious flaw in plaintiff's case. See 10 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil Sec. 2716 (2d ed. 1983).
 
 
 11
 Through the depositions of Newton Wesley and Dennis Coffey, Conrail presented evidence tending to show that Finn had been initially rejected for his bad eyesight, not for his disciplinary record, and that no confusion arising from another employee's records had occurred. Wesley, the B & M official who was responsible for the hiring of new employees on the Needham run, testified that Finn had initially been turned down because he failed the eye test and had eventually prevailed because the union persuaded the B & M to relax its eye test standards. Wesley said he did not recall any B & M employee checking with Conrail as to the disciplinary record of any job applicant. Such an inquiry was unnecessary, according to Wesley. "Knowing Conrail," he asserted, "we recognized if [a putative employee's] discipline record were severe, they probably would not have been employed by Conrail." Wesley testified that therefore, as far as he remembered, the B & M's contact with Conrail regarding job applicants for the Needham run was limited to checking a Conrail roster to ensure that the applicant was in fact a Conrail employee. In any case, Wesley deposed that he had checked with other B & M officials who had been involved in interviewing Conrail employees, and none of them remembered hearing of any records mix-up relative to Finn.
 
 
 12
 Coffey, Wesley's assistant, confirmed that in hiring Conrail employees the B & M had time to do no more than a "cursory examination of their background." This meant that, at most, the B & M would "contact [Conrail], if we thought it was applicable to the particular job experience that we were looking for, and confirm that the individual was employed in the position in which he said he was employed."
 
 
 13
 Coffey testified that he had no knowledge of any confusion regarding the disciplinary record of Edward J. Finn in particular. He acknowledged that he might have met with Finn and MacGray in late June 1977, but he could not recall any details about such a meeting. He did say, however, that it was "very, very unlikely" that he would have made a telephone call to Conrail during the course of such a meeting. Any assertion by MacGray that he did make such a call, said Coffey, was "probably wrong."
 
 
 14
 In the face of Conrail's negative evidence regarding the existence of a record-keeping error such as plaintiff had alleged, plaintiff was required to go beyond her complaint and "point to specific facts that were properly asserted in [her] affidavits and supporting materials which, if established at trial, would entitle [her] to prevail on these matters." Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir.1980). Plaintiff had to show the existence of some evidence, admissible at trial, that supported her allegation that Conrail had negligently confused Finn's records with those of someone else. Fed.R.Civ.P. 56(e); 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil Sec. 2727 at 133-37 (2d ed. 1983). A mere promise to produce admissible evidence at trial will not suffice. Soar v. National Football League Players' Association, 550 F.2d 1287, 1289 n. 4 (1st Cir.1977).
 
 
 15
 The sole source for the story about the alleged record mix-up is the contention by Claude MacGray, Finn's union representative, that Coffey told him such an error had occurred. No writings in Conrail's or B & M's personnel records or files were offered in support of this story, nor was any Conrail employee or other person mentioned as a potential witness who would testify to such an occurrence. MacGray himself professed to no personal knowledge of the alleged error, and Coffey, the story's purported author (who now denied any recollection of it), did not work for Conrail and could, at most, have relayed it from someone who did. Hence MacGray's statement is plainly hearsay under Fed.R.Evid. 801 insofar as offered to prove that Conrail negligently confused another person's records with Finn's. It would, therefore, be inadmissible at a trial to prove that Conrail made any such error. Maiorana v. MacDonald, 596 F.2d 1072, 1080 (1st Cir.1979); Fed.R.Evid. 802.[4] Material that would be inadmissible at trial cannot be considered on a motion for summary judgment because, if offered at trial, it would not serve to establish a genuine issue of material fact. 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil Sec. 2727 at 156 (2d ed. 1983). Thus, the deposition testimony of Claude MacGray was not competent to demonstrate a triable issue over whether or not Conrail negligently mistook another employee's records for Finn's, as plaintiff alleges.
 
 
 16
 Similarly, the deposition testimony and interrogatory answers of the plaintiff, Patricia Finn, were incompetent to establish this element of plaintiff's case. By Mrs. Finn's own admission, her claim that a record-keeping error occurred was based on statements made by her husband before his death. She concedes, however, that her husband had no personal knowledge of the record mix-up; he relied entirely on the statement of MacGray that such an error had occurred. Based as it is on a kind of totem-pole hearsay, her testimony would be no more competent to prove a mix-up than would the testimony of MacGray.[5]
 
 
 17
 Thus plaintiff, after more than four years of discovery, failed to adduce any admissible evidence to rebut Conrail's prima facie showing that it did not make a record-keeping error as alleged. Without some competent evidence of the records mix-up, plaintiff is without proof of the allegedly negligent act which, in her complaint, she attributes to Conrail. We conclude, therefore, that summary judgment was appropriate.
 
 
 18
 Because plaintiff could point to no admissible evidence that Conrail performed the negligent act on which her claim rests, we do not reach the issue of whether there was a physical injury under Bullard v. Central Vermont Ry., 565 F.2d 193 (1st Cir.1977), nor need we consider various alternative grounds asserted by Conrail in support of summary judgment. See note 3, supra. Cf. Norton v. Mathews, 427 U.S. 524, 530-32, 96 S.Ct. 2771, 2774-75, 49 L.Ed.2d 672 (1976).
 
 
 19
 Affirmed.
 
 
 
 [1]
 When he first heard that he had not been "picked up," Finn had visited with his family optometrist and received a new prescription for bifocals. With this new prescription, he was apparently within the B & M's vision standards
 
 
 [2]
 The B & M is not a party to this appeal
 
 
 [3]
 This is not to say that even if Conrail had negligently mixed up Finn's records his administratrix would necessarily have had a legally sufficient cause of action. Conrail raises a number of defenses, including the contention, accepted by the district court, that psychological depression and suicide resulting from a record-keeping mistake would not be actionable. As we need not reach this and the other alternative grounds of defense in order to decide the present appeal, we do not express any opinion on these issues. See infra
 
 
 [4]
 It is possible that MacGray would have been permitted to testify as to Coffey's purported statement in order to impeach Coffey's testimony, Fed.R.Evid. 607, 613, or, conceivably, to refresh Coffey's memory of the statement, cf. Fed.R.Evid. 612. See 3 J. Weinstein & M. Berger, Weinstein's Evidence paragraphs 607, 612 (1985). Such testimony would nevertheless remain inadmissible as evidence of truth of the matter allegedly asserted (i.e., that the record-keeping error actually occurred), since under Fed.R.Evid. 801(d)(1)(A), a declarant's prior inconsistent statements are inadmissible as substantive evidence unless they were made "under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or at a deposition." See United States v. Porter, 544 F.2d 936, 938-39 (8th Cir.1976); J. Weinstein & M. Berger, supra
 Coffey's statement cannot be considered an "admission by a party-opponent," Fed.R.Evid. 801(d)(2), since Coffey, the declarant, is an employee of the B & M rather than of Conrail.
 
 
 [5]
 Statements made by Finn himself in his typewritten "diary," or by Finn's psychiatrist based on what was related to him by Finn, would similarly be inadmissible and therefore cannot be considered in weighing the motion for summary judgment