**KAPPA SIGMA FRATERNITY, et al.**

v.

**KAPPA SIGMA GAMMA FRATERNITY, et al.**

Civ. No. 85–721–D.

United States District Court,
D. New Hampshire.

Feb. 23, 1987.

Lee, Smith & Zickert by Thomas E. Smith, Chicago, Ill., McSwiney, Jones, Semple & Douglas by Robert J. Lynn, Concord, N.H., for plaintiffs.

Sulloway, Hollis & Soden by Warren C. Nighswander, Concord, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

Plaintiffs, a national collegiate Greek-letter fraternity and its officers, have brought this suit against a former, now disaffiliated, chapter and its officers alleging that defendants' use of a chameleonic variant of plaintiffs' federally registered fraternal trademarks fleeces the public. Seeking injunctive and ancillary relief only, not money damages, plaintiffs claim trademark and service mark infringement, false designation of membership, and misrepresentation pursuant to the Lanham Act, 15 U.S.C. §§ 1051–1127 (Counts I–III), and tortious interference with a not-for-profit license relationship, wrongful deprivation of property, and misappropriation of trade secrets under common law. (Counts IV–VI).

The matter is currently before the Court on plaintiffs' motion for summary judgment with respect to Counts I, II, and III, and defendants' objection thereto. Resolution of the issues presented therein requires the Court to traverse the labyrinth of trademark infringement law,[1] so, girded by the jurisdictional nimbus of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1332 and 1338, the Court proceeds. A recounting of the historical background of this litigation is necessary.[2]

### I

Plaintiff Kappa Sigma Fraternity ("Kappa Sigma") is an unincorporated collegiate fraternal organization with an international membership of more than 132,000 persons. Kappa Sigma has chapters on or in close proximity to the campuses of 198 colleges and universities in the United States and

---

1. The area of trademark infringement law has been described as marked by "doctrinal confusion, conflicting results, and judicial prolixity." *HMH Pub. Co., Inc. v. Brincat*, 504 F.2d 713, 716 (9th Cir.1974); *accord Railroad Salvage of Conn. v. Railroad Salvage, Inc.*, 561 F.Supp. 1014, 1016 & n. 1 (D.R.I.1983).

2. The facts as set forth below have been taken from pleadings, affidavits, exhibits, and deposition transcript excerpts presented to the Court, and are facts which are uncontradicted by the parties.

Canada, and alumni chapters in many major cities in the United States. The individual plaintiffs named in the complaint are officers of Kappa Sigma (e.g., the "Worthy Grand Procurator" and the "Worthy Grand Master of Ceremonies"), who as a group comprise the Kappa Sigma "Supreme Executive Committee" ("SEC"). Kappa Sigma is the owner of record of five active United States trademark registrations, including registrations for the juxtaposed Greek letters "kappa" and "sigma" and their English-letter equivalent, the mark "Kappa Sigma". Members of Kappa Sigma are entitled to and do refer to themselves as "Kappa Sigs" or other similar diminutives of "Kappa Sigma", and are privy to, among other arcane fraternal mysteries, Kappa Sig secret rituals and secret paraphernalia.

Defendant Kappa Sigma Gamma Fraternity ("KSG") is also an unincorporated collegiate fraternity, but is at present geographically limited to the campus of Dartmouth College in Hanover, New Hampshire. No members of KSG ("the KSGs") nor any residents of the KSG fraternity house are members of Kappa Sigma, and Kappa Sigma does not currently have a chapter at Dartmouth. Defendant The Kappa Sigma House, Inc. ("House"), is an unincorporated association holding title to and charged with maintaining the KSG fraternity house located at 7 Webster Avenue in Hanover.[3] Defendant David C. Hewitt is a former Kappa Sig, the current KSG advisor, and currently and for a number of years president of House.[4]

The national organization of Kappa Sigma was founded in 1869. In April 1905 the fraternity chartered its ninetieth chapter, the Gamma Epsilon Chapter of Dartmouth College ("GE"). In 1910 persons presumably affiliated with GE formed a corporation which acquired title to a piece of land at 7 Webster Avenue in Hanover and thereon built a fraternity house, the location of the current KSG fraternity house. This corporation was dissolved in 1936, but was replaced the same year by a successor corporation, defendant House in this litigation.

The Greek tragedy which is embodied in the instant litigation began in 1979 and 1980 when, for unknown reasons, GE failed to fulfill its chapter obligations to Kappa Sigma as specified in the Kappa Sigma constitution, by-laws, and rules. Inter alia, the chapter failed to send out a newsletter, failed to file certain reports with Kappa Sigma, and failed to forward the requisite drachmas of national dues. On November 11, 1980, GE elected to sever its relationship with Kappa Sigma altogether. The GE Grand Master informed Kappa Sigma national headquarters by way of letter, writing in pertinent part: "We feel that it is no longer beneficial to our chapter to remain affiliated with the national fraternity." Plaintiffs' Motion for Partial Summary Judgment, app., exhibit 10. As of that date, GE had initiated approximately 1,350 members into Kappa Sigma. On December 1, 1980, the SEC voted to accept GE's disaffiliation, and later that year the SEC voted unanimously to write off the defunct chapter's indebtedness.

Despite holding itself out to Kappa Sigma as now being a purely "local" fraternity, *id.*, KSG continued to solicit alumni Kappa Sigs for contributions to the Dartmouth chapter's coffers, employing letters and solicitation literature which were Delphic as to the chapter's affiliation with the national organization. By way of example, KSG sent a letter in March 1981 on Kappa Sigma letterhead "To all Dartmouth

---

3. The significance of the address is that the KSG newsletter, more of which follows below, is entitled "News From Number Seven".

4. The complaint as filed also named the individual officers of KSG as defendants in their personal capacities. However, in an earlier order this Court dismissed those claims, holding that plaintiffs could not simultaneously proceed against both the association and its individual members. *See Kappa Sigma Fraternity v. Kappa Sigma Gamma Fraternity*, No. 85–721–D (D.N.H. July 17, 1986) [Available on WESTLAW, DCTU database] (order granting motions to dismiss). The Court reminds the parties that this Order specifically stated: "[T]his dismissal of the individual defendants does not mean that they cannot be bound by any injunction that plaintiffs might obtain." *Id.* slip op. at 6 (citing Rule 65(d), Fed.R.Civ.P.).

KE Alumni"[5] stating, amidst numerous references to the letter's addressees as being "our alumni", that "[W]e have formally become a local chapter of KE. ... [T]o clear up any confusion, we will retain the name Kappa Sigma. However, we will no longer be the Gamma Epsilon chapter of the national fraternity, instead we will be the KE Gamma chapter." *Id.* at exhibit 12.

Similar missives soliciting alumni lucre continued to obfuscate the chapter's affiliation (or rather, lack thereof) throughout 1982, 1983, 1984, 1985, and 1986. *See, e.g., id.* at exhibit 13 ("Dear Dartmouth Kappa Sig: ... the organization is basically the same one you knew when you were at Dartmouth. On the Dartmouth campus, the brothers continue to be referred to as Kappa Sigs.") (May 11, 1982); *id.* at exhibit 32 ("As president of Kappa Sigma, I wish to extend a warm welcome to you, our alumni benefactors.") (Summer 1982 issue of "News From Number Seven" ("News")); *id.* at exhibits 35, 37 (referring to fraternity as "Kappa Sigma" or "Kappa Sig"; members as "Kappa Sigs", "Brothers at Kappa Sig", and "Kappa Sigma Brothers") (respectively, Spring 1984 and Winter 1985 issues of News); *see also id.* at exhibits 33, 36, 38–41. The Court has seen evidence of numerous instances occurring even into 1986, more than five years after disaffiliation and beyond the date this lawsuit was filed, in which the local chapter, despite its voluntary disaffiliation with Kappa Sigma, continued to employ plaintiffs' marks or continued to refer to local chapter members as "Kappa Sigs" or members of "Kappa Sigma". *Id.* at exhibits 18, 26–30, 38–40; Michel Deposition at 18–20, 46–47; Hewitt Deposition at 36–37; Wilson Affidavit at 4.

Other evidence before the Court establishes: (1) that the local chapter's name was intentionally derived by combining the name "Kappa Sigma" with the "Gamma" from "Gamma Epsilon Chapter" in order to keep the name "Kappa Sigma" extant at Dartmouth, *see, e.g., id.* at exhibit 13; (2) that the chapter chose its new name in order to reinforce its former affiliation with Kappa Sigma, *see, e.g., id.* at exhibit 11; (3) that individual KSGs currently view membership in the defunct GE as being temporally equivalent to membership in KSG, *see, e.g., id.* at exhibit 13; Hewitt Deposition at 49–50; Michel Deposition at 68–69; and (4) that KSG members have visited Kappa Sigma fraternity houses on other campuses, Michel Deposition at 66–67. Finally, there is evidence that the public is unable to differentiate between the similar Greek-letter names herein at issue, evinced by a public misconception that Kappa Sigma is present on the Dartmouth campus. *See, e.g., id.* at exhibit 77; Hewitt Deposition at 60; Webb Affidavit at 18; Schissel Affidavit at 2; Michel Deposition at 46–47.

## II

Under the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. A dispute of fact is "material" if it "affects the outcome of the litigation," *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 15 (1st Cir.1986) (quoting *Pignons S.A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir.1981)), and "genuine" if there is "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial," *id.* (quoting *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)). While the burden is upon the moving party to affirmatively demonstrate that there is no genuine, material factual issue, and the Court is required to view the record in the

---

**5.** The uppercase letter "E" is used to designate the Greek letter "sigma", as the two look somewhat similar.

light most favorable to the party opposing the motion and indulge all inferences favorable to that opposing party, *id.*, the Court is not required to ignore "clear uncontradicted facts", *Astra Pharmaceutical Prod. v. Beckman Instruments*, 718 F.2d 1201, 1207 (1st Cir.1983).

Plaintiffs contend they are entitled to summary judgment in their favor based on what they allege to be four undisputed areas of fact: that they own the registered Kappa Sigma marks, that the defendants continued using the marks after disaffiliation, that the chapter's choice of a name confusingly similar to "Kappa Sigma" and House's retention of its name "The Kappa Sigma House, Inc.", *have* caused confusion and are likely to *continue* to cause confusion, and that the defendants' use of plaintiffs' marks and names similar to "Kappa Sigma" was and is intended to capitalize on the chapter's past Kappa Sigma relationship, particularly with regard to soliciting funds from alumni Kappa Sigs. Plaintiffs argue that as a matter of law GE was a licensee, the license ended with the chapter's disaffiliation, and defendants lost the right to further use plaintiffs' marks.

Defendants, on the other hand, argue that there is a Pandora's box of genuine issues and affirmative defenses which preclude the granting of summary judgment. They argue that there are disputed issues of material fact as to whether they continue to use plaintiffs' marks, and they argue as to whether the names "Kappa Gamma Sigma" and "The Kappa Gamma House, Inc." are confusingly similar to "Kappa Sigma" or misleading to the alumni Kappa Sigs whom defendants continually solicit for donations. They also argue against summary judgment by way of defenses: that plaintiffs waited five years before bringing suit, so the suit is barred by laches; that use of the marks occurs only on the Dartmouth campus and is therefore not "in commerce" within the meaning of the Lanham Act; that Kappa Sigma's failure

to register the House corporate name as a Kappa Sigma mark allows House a continued right to use the name under state law; and, finally, that, viewed in the national context of a plethora of Greek letters being used in any number of combinations by Greek-letter societies, "Kappa Sigma" and "Kappa Sigma Gamma" are contemporaneously acceptable.[6] The Court finds these arguments unpersuasive, addressing them seriatim.

The Lanham Act was enacted by Congress in order "to provide uniform, comprehensive federal law to govern questions of trademarks used in and affecting interstate commerce." *Thrifty Rent-A-Car System, Inc. v. Thrift Cars, Inc.*, 639 F.Supp. 750, 754 (D.Mass.1986) (citing *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 193, 198, 105 S.Ct. 658, 661, 663, 83 L.Ed.2d 582 (1985)). Federal registration of a mark under the Lanham Act is prima facie evidence that the registrant has exclusive rights to use the registered mark in commerce, subject to any common law legal and equitable defenses which would be otherwise assertible if the mark were unregistered. 15 U.S.C. § 1115(a). Section 1065 of the Act provides that registered marks can become "incontestable", generally by filing an affidavit within one year of expiration of any five-year period following registration, during which period the mark has been in continuous use. Incontestability gives rise to registration of the mark being "conclusive", rather than prima facie, evidence of the registrant's exclusive right to the mark, and is subject only to a narrow range of seven defenses enumerated in the Act. 15 U.S.C. § 1115(b); *Park 'N Fly, Inc., supra*, 469 U.S. at 194–95 & n. 3, 105 S.Ct. at 661–62 & n. 3.

■ Plaintiffs' five registered marks are incontestable within the meaning of the Lanham Act; consequently, defendants are limited to the defenses listed in § 1115(b). Defendants have neither asserted any of these defenses nor, on the basis of the evidence presented, does the Court find

---

6. Defendants also assert that the cases cited in plaintiffs' memoranda are inapposite because

the cases do not involve Greek-letter societies. This argument is without merit.

that any apply. That being so, ownership of the marks (and the rights appurtenant thereto) is undisputed.

■ Furthermore, the law is clear that defendants have no right to use plaintiffs' marks by virtue of the parties' past relationship. The arrangement between Kappa Sigma and the Gamma Epsilon Chapter was a licensing agreement. *See United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 139–40 & n. 7 (3d Cir.1981). A licensee "acquires only the right to use the trademark, while title to the mark and the reversionary interest in that use remains with the owner." L. Altman, 3 *Callman, The Law of Unfair Competition, Trademarks and Monopolies* § 19.46 at 200–01 (4th ed. 1983) [hereinafter *Callman* ]; *Jordan K. Rand, Ltd. v. Lazoff Bros., Inc.*, 537 F.Supp. 587, 593 (D.P.R. 1982). Upon disaffiliation, the licensing arrangement ends; the licensing arrangement at an end, "the licensee's right to the trademark also ends, and the mark reverts to the licensor." *Callman, supra*, § 19.53 at 216 (4th ed.1983 & Supp. 1986) (and cases cited therein). "Once the contract expires, any subsequent use by the former licensee constitutes trademark infringement." *Id.; see also, e.g.*, J. McCarthy, *Trademarks and Unfair Competition* § 25:7(A) (2d ed. 1973 & Supp. 1982); *United States Jaycees v. Philadelphia Jaycees, supra*, 639 F.2d at 142; *Prompt Elec. Supply Co., Inc. v. Allen-Bradley Co.*, 492 F.Supp. 344, 348–50 (E.D.N.Y.1980).

Logically speaking, defendants' contention that there are disputed issues of material fact as to whether they continue to use plaintiffs' marks misses the point. If defendants *are* currently using plaintiffs' marks (the Court neither making nor implying such a finding), such action is clearly unlawful, and plaintiffs' would be entitled to injunctive relief. If, on the other hand, defendants have ceased using the marks as they so assert, then injunctive relief directed at them proscribing use of the marks would have no *actual* effect upon them; thus, defendants would have no grounds upon which to object. Defendants' argu-

ment is trapped between a Scylla and a Charybdis.

■ Defendants also contend that there is a material dispute as to whether the names "Kappa Sigma Gamma" and "The Kappa Sigma House, Inc." are confusingly similar to the name "Kappa Sigma" and thus likely to mislead the alumni Kappa Sigs whom defendants continually solicit for donations. The Court finds that there is no genuine issue of material fact. As a matter of law, the names employed by defendants are likely to cause confusion within the meaning of the Lanham Act.

Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), provides in pertinent part:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

. . . .

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

As this section makes clear, the critical issue in an infringement action is whether the likelihood exists that a prospective consumer would experience confusion between a registered mark and an alleged interloper. *Purolator, Inc. v. EFRA Dist., Inc.*, 687 F.2d 554, 559 (1st Cir.1982); *Schroeder v. Lotito*, 577 F.Supp. 708, 718 (D.R.I.1983). Likelihood of confusion is considered a question of fact, *Mobil Oil Corp. v. Auto-Brite Car Wash, Inc.*, 615 F.Supp. 628, 631 (D.Mass.1984) (and citations therein), and the test for determining whether likelihood of confusion exists involves weighing eight factors: the similarity of the marks; the similarity of the services; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers or suppliers; evidence of actual confusion; the defendants' intent in adopting the

names; and the relative strength of the parties' marks, *Astra Pharmaceutical Prod., supra,* 718 F.2d at 1205; *Pignons, supra,* 657 F.2d at 487; *Railroad Salvage, supra* note 1, 561 F.Supp. at 1022–23. Applying these factors even in the light most favorable to defendants, *Finn, supra,* 782 F.2d at 15 (quoting *Hahn, supra,* 523 F.2d at 464), it is beyond cavil that the names chosen by defendants and herein at issue are likely to cause confusion.

The Court must view the names and services and presentation thereof not in isolation, but as a whole, *Astra Pharmaceutical Prod., supra,* 718 F.2d at 1205; *Schroeder, supra,* 577 Supp. at 723, assessing the distinguishability of the competing marks "as it would appear to the ordinary purchasers of the services in question," *Kampgrounds of America, Inc. v. North Delaware A–OK Campground, Inc.,* 415 F.Supp. 1288, 1294 (D.Del.1976), *aff'd without opinion,* 556 F.2d 566 (1st Cir.1977), and including "not only what was said, but also that which was reasonably implied," *Schroeder, supra,* 577 F.Supp. at 723 (citing *American Home Prod. Corp. v. Johnson & Johnson,* 577 F.2d 160, 165 n. 11 (2d Cir.1978)). Even to those initiated into the mysteries of Greek-letter societies, a fraternity house owned by "The Kappa Sigma House, Inc." could easily be assumed to be a house for Kappa Sigma members. And, it belabors the obvious to state that "Kappa Sigma Gamma" is similar to "Kappa Sigma".

The goods and services herein at issue are not similar, they are *identical:* all parties are associated in some way with offering membership in a collegiate Greek-letter fraternity. The parties' channels of trade and the parties' classes of prospective purchasers—college students—are identical; ipso facto, the advertising media employed by the parties must overlap, further promoting a likelihood of confusion. Although evidence of actual confusion need not be shown, *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.,* 626 F.2d 193, 194 (1st Cir.1980), its occurrence is "the strongest evidence of a likelihood of confusion," *Railroad Salvage, supra,* 561 F.Supp. at 1023;

*see also Pignons, supra,* 657 F.2d at 491–92. In the instant case, the showing that confusion has occurred in a number of instances is indicative that confusion is likely to recur.

Defendants' motive in selecting a variant of "Kappa Sigma" as the chapter name and in keeping the name "The Kappa Sigma House, Inc." as a fraternity house name is more than "suspect", *Railroad Salvage, supra,* 561 F.Supp. at 1023, it is manifestly flawed. Defendants wanted the administrative and monetary freedom of autonomy, but, at the same time, they wanted to be able to take advantage of their former Kappa Sigma relationship so they could more effectively solicit contributions from GE alumni. The fact that the names herein at issue were used by defendants for a substantial period of time after disaffiliation with the intent to exploit plaintiffs' good will is strong evidence that the selected names hold the potential for being confused. *Purolator, Inc., supra,* 687 F.2d at 561; *Kampgrounds of America, Inc., supra,* 415 F.Supp. at 1296–97. Finally, on the evidence before the Court—defendants' professed and in fact "local" character, opposed to the century-plus age of Kappa Sigma, the incontestable status of the Kappa Sigma marks, and Kappa Sigma's national scope—there can be no dispute as to the relative strength of the parties' marks.

Consideration of the evidence in light of the factors enumerated above mandates a finding that a clear and present likelihood of confusion exists between the marks owned by plaintiffs and the marks used by defendants.

The Court briefly considers defendants' affirmative defenses. Defendants first assert that "plaintiffs are chargeable with abandonment, laches, and/or acquiescence in having delayed more than five years in asserting their claims." Answer of Defendants Kappa Sigma House, Inc., and David C. Hewitt at 7. However, the defense of laches is not easily assertible; it is "reserved for those rare cases where a protracted acquiescence by plaintiff induces a defendant to undertake substantial

activities in reliance on the acquiescence," *Jordan K. Rand, Ltd., supra,* 537 F.Supp. at 594, and "estoppel by laches is not available as a defense to a defendant in a trademark infringement or unfair competition case where its own actions had been calculated to trade upon plaintiff's reputation," *id.* The evidence before the Court is replete with instances of plaintiffs' attempting to effect a rapprochement during the five-year period between disaffiliation and the filing of this suit. Furthermore, there is adequate evidence that the KSGs used plaintiffs' registered marks, knowing that such use was unwarranted. *See, e.g.,* Hewitt Deposition at 52–53. And, in any event, the laches defense is irrelevant; injunctive relief, not money damages, is at issue. *See, e.g., McLean v. Fleming,* 96 U.S. (6 Otto) 245, 253, 24 L.Ed. 828 (1877); *United States Jaycees v. San Francisco Jr. Chamber of Commerce,* 354 F.Supp. 61, 72–73 (N.D.Cal.1972), *aff'd* 513 F.2d 1226 (9th Cir. 1975).

■ Defendants also assert that defendant House had a right under state law to the use of "The Kappa Sigma House, Inc." prior to that name's federal registration by Kappa Sigma. This defense fails for two reasons. First, given that plaintiffs' marks have incontestable status, defendants' defense is viable only if defendants' use was adopted without knowledge of a senior user's prior use. 15 U.S.C. § 1115(b)(5). Such was clearly not the case. Second, the law is well established that a seceding local chapter of a national organization loses the right to use the latter's marks upon disaffiliation. *See, e.g., National Bd. of YMCAs v. Flint YMCA,* 633 F.Supp. 1, 2 (E.D. Mich.1985) ("[I]t would not be fair to allow a disaffiliated local to retain a name or mark which would cause members of the public to think they are dealing with an affiliate of a national organization when in fact they are not."); *United States Jaycees v. Philadelphia Jaycees, supra,* 639 F.2d at 143 ("To say that the licensee has acquired rights that survive the legal termination of that license, destroys the entire concept of a license. ... No rights are established by such use."); *United States*

*Jaycees v. San Francisco Jr. Chamber of Commerce, supra,* 354 F.Supp. at 71–72.

■ Defendants next assert that because their use of plaintiffs' marks is confined to the Dartmouth College campus, their use is not "in commerce" within the meaning of the Lanham Act, and because plaintiffs no longer have a Dartmouth chapter there is no likelihood of confusion. The Court of Appeals for the First Circuit has held to the contrary: "[A]n adverse effect on the sales or goodwill of one whose trademark is used in interstate commerce is a sufficiently substantial effect on interstate commerce to entitle the registrant to invoke the protection of the Lanham Act, even if the sales of the defendant are wholly intrastate." *Purolator, Inc., supra,* 687 F.2d at 559 (and citations therein). Considering Kappa Sigma's national scope, the unrefuted evidence that visitation between KSG and Kappa Sigma chapters has occurred, and the fact that defendants' alumni solicitations have certainly been of an interstate character, defendants' "local nature" defense is untenable.

Finally, defendants assert that other Greek-letter societies use the Greek letters "kappa" and "sigma" in their names; thus, the KSG name choices are lawfully contemporaneous. Viewed in isolation, this might be the case. However, where the defendants did not *independently* adopt names similar to plaintiffs' but, rather, adopted their names by virtue of their original affiliation with the national organization, the names are not lawfully contemporaneous, and to hold otherwise would subvert the concept of a license. *United States Jaycees v. Philadelphia Jaycees, supra,* 639 F.2d at 142–43.

### III

Although trademark infringement cases often present factual issues which render summary judgment inappropriate, where, as in the instant case, the facts have been fully developed in material presented to the Court and the facts as relied upon by the defendants are "not susceptible of the in-

terpretation which [they] sought to give them," summary judgment is warranted. *Kazmaier v. Wooten*, 761 F.2d 46, 49 (1st Cir.1985) (and citations therein); *see also, e.g., Railroad Salvage, supra,* 561 F.Supp. at 1024; *Mobil Oil Corp., supra,* 615 F.Supp. at 631. On the evidence before the Court with regard to Counts I, II, and III of the complaint, there are no genuine issues of material fact, and plaintiffs are entitled to summary judgment as a matter of law. *See Astra Pharmaceutical Prod., supra,* 718 F.2d at 1205, 1209. Thus, the Court arrives at Areopagus. Defendants KSG and House may not continue to wander at will through the Elysian Fields of plaintiffs' good will.

■ Accordingly, the Court hereby grants a permanent injunction as prayed for against all defendants [7] with regard to defendants' improper use of Kappa Sigma marks and confusing variants thereof. It is hereby Ordered that, commencing forthwith:

1. All defendants and individual members of KSG are permanently enjoined from using, displaying, or authorizing the display or use of any and all Kappa Sigma registered marks at their fraternity house, on their persons, in publications, or elsewhere;

2. All defendants and individual members of KSG are permanently enjoined from misrepresenting to others that their fraternity is affiliated with Kappa Sigma or that they are "Kappa Sigmas" or "Kappa Sigs" or other such similar derivatives or that they represent or are members of Kappa Sigma;

3. All defendants are ordered to take all steps necessary to prevent themselves from being listed in local telephone directories, campus directories, maps, and any and all other publications or places as "KE" or the Greek letter equivalents thereof, "Kappa Sigma", "Kappa Sig", "K Sig", or any other designation reasonably associated with "Kappa Sigma";

4. All defendants and individual members of KSG are permanently enjoined either from identifying themselves as "KEs" or the Greek letter equivalents thereof, "Kappa Sigmas", "Kappa Sigs", "K Sigs", or any other designations reasonably associated with the Kappa Sigma fraternity or from identifying their fraternity as a Kappa Sigma fraternity in mailings to alumni and other persons or organizations and in other forms of advertising or solicitation; and

5. All defendants and individual members of KSG are permanently enjoined from using as an identification for their fraternity any combination of Greek letters which include the Greek letters "kappa" or "sigma", included in which is that defendant Kappa Sigma Gamma Fraternity is permanently enjoined from using "Kappa Sigma Gamma" or any other name which includes the Greek letters "kappa" or "sigma", and defendant Kappa Sigma House, Inc., is permanently enjoined from using "Kappa Sigma" or any other name which includes the Greek letters "kappa" or "sigma" as a portion of its corporate or business name.

■ In addition, because the Court finds that defendants willfully and deliberately chose to and so did exploit their former affiliation with Kappa Sigma for a significant period of time after disaffiliation in order to solicit contributions from alumni members of Kappa Sigma, the Court finds that this is an "exceptional" case within the meaning of the Lanham Act and accordingly grants plaintiffs' request for court costs and reasonable attorneys' fees. *See* 15 U.S.C. § 1117; *Railroad Salvage of Conn., supra,* 561 F.Supp. at 1024 & n. 15. Plaintiffs are hereby directed to submit their application for that portion of counsel fees and disbursements attributable to preparation of the motion sub judice within ten days of the date of this Order, and defendants shall file their reply thereto within the ten days next following. At the close of this case, pursuant to Rule 54(b), Fed.R.

7. *See supra* note 4.

Civ.P., the Clerk of this Court will assess court costs in accordance with this Order.

SO ORDERED.